LE BLANC, Justice.
 

 In this suit, the plaintiff, Mrs. Daisy Picou, wife of Nelo Hebert, seeks to recover judgment against the defendants, Fohs Oil Company and Edward Naquin, in solido, for damages in the sum of $29,200 for unlawful invasion of her property rights, when, on August 30, 1941, as alleged, the said Edward Naquin, and other persons, all employees of Fohs Oil Company, entered upon and trespassed on her property in Terrebonne Parish and conducted certain geophysical explorations for the purpose of obtaining mineral information and data used by the said Fohs Oil Company in its business as oil producers.
 

 In her petition plaintiff alleged that she was the owner, and in possession of a tract
 
 *1071
 
 of land containing 180 acres situated in Section
 
 76,
 
 Township 17, South, Range 19 East, Terrebonne Parish, Louisiana, and that by reason of the defendant’s unlawful entry and trespass thereon and cutting trees, digging holes and shooting dynamite, she suffered damages in the following respect's: The loss of 72 trees which were cut down, $7,200; illegal entry, $2,000; information obtained of the underlying structure of the land, $10,000, and deterioration of the leasing value of her land by the dissemination of knowledge secured by Fohs Oil Company, $10,000.
 

 The defendants filed separate answers. In its answer, Fohs Oil Company denied the commission of a trespass but averred that, to the contrary, it secured premission to enter upon plaintiff’s land from her husband, Nelo Hebert (whose agency and authority is not disputed), after having explained to him the purpose and the nature. of the entry. Further it averred that it secured no mineral information concerning the underlying structure of plaintiff’s property and therefore could not disseminate any. This defendant admitted that in the summer of 1941, .through an exploration or geophysical company which it had employed, it entered upon the-plaintiff’s property under its agreement with her- agent and exploded one shot of dynamite at or near the dividing line between the said property and that of one Albert Champagne and that in entering thereon it had cut down some underbrush and 21 trees all under six inches in diameter. That it offered to adjust the matter of damages with plaintiff through her agent, but all without success.
 

 The defendant, Edward Naquin, answered by denying, for lack of sufficient information to justify a belief, all the articles of plaintiff’s petition. After trial in the district court there was judgment in favor of the plaintiff and against the defendant, Fohs Oil Company, in the sum of $50. The demands against the defendant,, Edward Naquin, were rejected. The trial1 judge found that inasmuch aá $50 was the. amount offered by Fohs Oil Company in-settlement of plaintiff’s damages and was refused, she should be charged with the costs of court and he decreed accordingly. Plaintiff has appealed.
 

 Counsel on both sides seem to be-in agreement on the law of the case which is to the effect that the right to explore and conduct geophysical and geological' surveys for oil, gas and other minerals is. a valuable property right which belongs exclusively to the owner of the land and'that if it is wrongfully exercised, it is a proper element to be considered in awarding damages.. As a matter of fact they cite the-same decisions of this court in their briefs, as authority on this point. These are Angelloz v. Humble Oil & Refining Co., 196 La. 604, 199 So. 656; Layne Louisiana Co. v. Superior Oil Co., 209 La. 1014, 26. So.2d 20 and Franklin v. Arkansas Fuel Oil. Co., 218 La. 987, 51 So.2d 600.
 

 
 *1073
 
 The important consideration, from the legal standpoint, as implied from the foregoing statement, is that there has been a wrongful entry and exercise of the right of exploration; something which amounts to a trespass or an invasion of another’s property rights. In some of the cases referred to, Layne Louisiana Co. v. Superior Oil Co., for instance, there was a wanton trespass committed. Plaintiff in this case no doubt realized that she had to show at least an unlawful entry, in order to maintain her action because she did allege, as already stated, that the “employees of the Fohs Oil Company, while acting within the scope of their authority and in the furtherance of the business of the said Fohs Oil Company, did unlawfully enter upon and trespass upon the property described in paragraph 1 of this petition and did cut trees thereon, did dig holes in said property, and did shoot dynamite in said holes, all ■of which acts were done without the permission and in absolute disregard of the rights of your petitioner.” In view of the defendant’s contention, as presented by its answer; that the entry was with plaintiff’s permission, after explanation to her agent of its nature, purpose and extent, which was to establish a “shooting line” over and across his wife’s property, with the understanding between them that she would be paid a fair and reasonable amount for all damages caused by the said operation, plaintiff seems to have abándoned her allegation of unlawful entry and trespass without permission and changed her position to one where the permission or license had been given for a special purpose and was exceeded in its exercise by the grantee and that constituted a trespass nevertheless. 33 Am.Jur. 401, Licenses, sec. 95, is cited as authority to this effect.
 

 Her contention now is that the defendant was granted a right of passage over her land only and that it used the permission given as a subterfuge to enter upon her property to conduct its geophysical operations and that its act, in doing so, was an express violation of the limited permission and amounted to a trespass in bad faith.
 

 These opposing contentions of the parties presented a sharp issue of fact which the district judge resolved in favor of the defendant. The following is his analysis and appraisal of the evidence on this point:
 

 “Plaintiff’s husband and chief witness testified that Mr. Swayze and another representative of the Fohs Oil Company, subsequently identified as William R. Reid, called upon him to obtain permission to cross over the Hebert property to reach adjoining property belonging to Ellender, on which latter property it was proposed ‘to take a test or something’ (see page 8 of transcript of testimony). The general substance of the witness’ testimony conveys the impression that in the tests that were proposed to be made the Ellender property was to be ‘shot’, that is, dynamite was to be discharged
 
 *1075
 
 thereon as a necessary incident to the geophysical tests to be made. He. states, however, that the only permission granted with reference to the plaintiff’s property was a right of passage to reach the Ellender property. As against that testimony we have the testimony of Mr. L. M. Swayze, who testified that with Mr. Reid and a son of the plaintiff he drove to the Pointe au Chien store of plaintiff’s husband for the purpose of securing a shooting permit ‘to extend a shooting line into Mr. Hebert’s property’. The witness testified that his company was doing some shooting work along the South side of Lake Long, and that there was one line that the company wished to project southwest from the producing area on the Lake Long dome. The testimony is quite emphatic in referring to the purpose for which a permit to enter upon the Hebert property was desired, viz: to extend a shooting line into the propertjc Mr. Swayze’s testimony is confirmed in every respect by Mr. Reid.
 

 “This variance in the testimony suggests and requires that it be weighed in the light of surrounding circumstances. The evidence shows clearly that McCollum Exploration Company was doing geophysical research work by the seismographic method for Fohs Oil Company 'to enhance the picture’’ on the geologic structure of the Lake Long Dome lying northeast of the property of defendant, that permits to engage in such work in the immediate vicinity were obtained from the owners of adjoining lands, that such permits-involved ‘shooting’ (discharging dynamite as a necessary incident to geophysical tests by the seismographic-method) the said lands, and that the actual ‘shooting’ operations were carried on with the knowledge and consent of said owners. These facts unquestionably lend substance to the testimony of Swayze and Reid when they iSay the immediate object of their visit, to the. Hebert store on Point au Chien was to secure a ‘shooting permit’.. And, when coupled with the widely known mineral operations on the Lake-Long Dome for a period of a few years, they indicate, too, the likelihood of some general knowledge in the community as to the nature of the operations then in progress. They are further enhanced by the circumstance that the testimony of Hebert himself" indicates that there must have been some reference to or discussion of the-purpose Swayze says he had in mind,, because he stated on direct examination (see page 8 of transcript of testimony) that Swayze ‘said he wanted to-go over it to take a test or something’,, though Hebert insisted the ‘test’ he had. in mind was to be made on adjoining property belonging to Ellender and not. on the Hebert tract. In any event,, these circumstances do not impress-
 
 *1077
 
 us as indicating án attempt on» the part of Swayze to gain entrance on the property by subterfuge, or that the ■entry constituted a deliberate trespass in bad faith.
 

 * * * * * *
 

 “The testimony does show the pos.-sibility that there may have been no ■meeting of minds as to the right of ■entry under consideration, but it is our 'belief that any such lack of agreement resulted more from a want of understanding than it does from any subterfuge or misrepresentation. Hence, it is our opinion that the entry upon the Hebert property, even though- it may not have been made strictly in’ accordance with the grantor’s intent, cannot be construed as a trespass in bad faith ■or as entry made ‘in absolute disregard of the rights’ of plaintiff.”
 

 We have carefully considered the -evidence and agree with the district judge’s statement and ■ with the conclusion he reached.
 

 A holding that the Oil Company 'had authority to go upon plaintiff’s land and exercised its authority in a lawful manner and in accordance with the understanding between them, would seem to dispose • of plaintiff’s demands for damages for the ■information obtained of the underlying structure of her land by the defendant and the consequent deterioration of its leasing value by the dissemination óf the knowl-edge it had secured. However it isn’t necessary to rest the decision of those demands on that basis because the evidence very definitely is to the' effect that in carrying 'out the' purpose of the .geophysical work conducted on her land by the defendant, which was to study the structure on two other properties to the north and west, on which they already held leases, they obtained no information whatever about her land. This testimony is not contradicted. If they obtained no information it is obvious that they could not have disseminated any.
 

 This leaves us only with the demand for damages for the cutting of trees.
 

 On this point it is to be observed that whereas the demand, as presented in plaintiff’s petition, is based on a tort arising out of trespass, she now claims something in the way of liquidated damages inasmuch as she now contends that her husband advised .defendant that for each tree that was cut down or damaged, it would have to pay $100. Some of her witnesses testified that they -had counted as many as 86 damaged trees although she had alleged only 72 in number. The defendant’s witnesses who counted them reported only 21. They varied in kind and in size, from 1% to 6 inches, and can hardly be said to have had any commercial value.
 

 Plaintiff’s demand for $100 per tree is predicated bn what her husband testified he told defendant’s agent at the time permission was granted to enter the property about, having to pay that price for each
 
 *1079
 
 tree, and his further statement that the agent agreed to his demand. Defendant’s agent denies any such understanding. That impresses us as being correct for it hardly seems plausible that if such an agreement had been made that plaintiff would not have rested her demand under it instead of merely suing for damages for unlawful cutting and destruction of the trees. Moreover, conceding that plaintiff’s agent did say something to defendant’s agent about charging $100 for each tree that was damaged, one of the witnesses by whom he sought to corroborate that part of his testimony apparently did not take him seriously for he says he “thought maybe he was joking”.
 

 In placing a value on the trees it is necessary to first fix the number’ that were cut down or damaged. There is too great a difference in the number reported by the witnesses on each side, to accept anything near their figures. We think the proper thing to do is to try to reconcile this difference by striking an average between them. In doing so we reach an estimate of between 50 to 60 trees. The testimony does not reveal the actual value of trees of the sizes mentione.il and, as we have stated before, they have no commercial value. They do have a certain potential value however which cart be taken into consideration. There is some testimony^ for in- ' stance, that some of them may have been used for fence posts.
 

 In cases of this kind the court-can resort to art. 1934 of the LSA-C.C. which provides that “In the assessment of damages * * * in cases of offenses,, quasi offenses, and quasi contracts, much, discretion must be left to the judge or jury * * See Angelloz v. Humble Oil & Refining Co., supra. The trial judge,, in the exercise of his discretion no doubt,, fixed the damages for the trees at the sum. of $50. We are of the opinion that it is; more than that and will increase it to the sum of $100.
 

 The trial judge assessed the costs against the plaintiff holding that she had. refused to accept defendant’s offer to adjust the damages at the amount he allowed', and that a formal tender would have been: useless and futile. In view of the increase-in the amount we are allowing this ruling; cannot apply and defendant will therefore-be charged for costs.
 

 For the reasons stated it is now ordered that the judgment appealed from be-amended by increasing the amount of the award from the sum of $50 to the sum of' $100 and that the defendant, Fohs Oil Company, be cast with all costs.
 

 As thus amended the judgment stands; affirmed.