ROGERS, Justice.
 

 Layne Louisiana Company, a partnership, sued the Superior Oil Company, á corporation, claiming damages in the sum of $65,565 for illegal trespass and geophysical operations on plaintiff’s property. Defendant admitted the trespass but denied that it occasioned plaintiff any damage beyond the sum of $200, which sum, together with $12 as accrued costs, was tendered in court by defendant and refused by plaintiff. On the merits, there was judgment in plaintiff’s favor for $6,297.50. Defendant appealed and plaintiff answered the appeal.
 

 These are the facts: The Layne Louisiana Company owns a tract of 2098 acres of land in Calcasieu Parish, subject to outstanding mineral rights on 1363.5 acres. Plaintiff’s property is entirely enclosed by a strong and adequate fence, the boundaries are plainly marked, and the property is posted with a number of signs warning trespassers. On or about August 3, 1944, without securing permission to do so, employees of the defendant broke a lock on one of the principal gates and entered upon plaintiff’s property with the equipment necessary for making a geophysical survey. Under defendant’s orders, separate crews entered upon plaintiff’s land on separate days and made a complete geophysical survey of the property using at least four vehicles in traversing plaintiff’s land and firing a number of shots upon the premises and at different points completely around the premises.
 

 
 *1019
 
 Defendant admits that, through its employees engaged in geophysical operations, it was guilty of trespass upon plaintiff’s property and that it is legally responsible therefor, but defendant contends it is liable only for such damages as plaintiff can prove it has suffered by reason of the trespass. Alleging that the trespass caused merely nominal damage to plaintiff’s prop•erty, defendant admits liability only to they; extent of $200 which amount it deposited^ in the registry of the court, subject to ■ withdrawal by plaintiff in settlement of its claim. Plaintiff, however, refused the tender.
 

 It is well settled under our law that only compensatory and not punitive or exemplary damages are recoverable for damages to property. Angelloz v. Humble Oil & Refining Co., 196 La. 604, 199 So. 656. The trial judge took cognizance of the rule in fixing the amount of the damages due plaintiff and consequently allowed plaintiff damages only in the amount he considered the proof showed plaintiff had actually suffered.
 

 The first item of damages claimed by plaintiff and which the judge allowed is $3,672.50 or $5 per acre for loss of value for mineral leasing purposes of 734.5 mineral acres owned by plaintiff in fee simple. Defendant argues that the judge erred in allowing this item of damage because the value of plaintiff’s land for mineral purposes is the same as it was before the geophysical exploration took place. But we find no error in the judgment with respect to this item of damages.
 

 It is a well-known and accepted fact in this, the third largest producing oil State, that the right to geophysically explore land for oil, gas or other minerals is a valuable right. Large sums of money are annually paid landowners for the mere right to go upon their land and make geophysical and seismograph tests. The information obtained as the result of such tests is highly valuable to the person or corporation by whom they are made. If the information thus obtained be favorable, it can be used and is used in dealing with the landowner for his valuable mineral rights. If the information be unfavorable, the fact quickly becomes publicly known and thus impairs the power of the landowner to deal advantageously with his valuable mineral rights. The average landowner is without means or funds to secure geophysical or seismograph information. Where that information, which is exclusively his by virtue -of his ownership of the land, is unlawfully obtained by others, the landowner is clearly entitled to recover compensatory damages for the disregard of his property rights.
 

 The judge correctly found from the evidence that the defendant was desirous of making a geophysical Survey of plaintiff’s tract of land. Defendant not only caused its employees to enter upon and make a geophysical survey of the land, but it also
 
 *1021
 
 caused its employees to entirely surround the land with shot points. Defendant’s purpose in so acting obviously was to secure by a complete survey of plaintiff’s tract information defendant considered would be valuable in connection with the geophysical explorations it was making in its neighboring lease block.
 

 The trial judge considered that $5 per acre as claimed by plaintiff was a fair lease value for each acre of land owned by plaintiff. The evidence shows that plaintiff’s property was a likely oil prospect prior to the geophysical exploration conducted thereon by the defendant. Six months elapsed from the time the geophysical exploration was made and the trial of the case. During that time no leases were entered into and defendant, influenced no doubt by the information it had obtained from the geophysical survey of plaintiff’s land, gave up its own lease block. The testimony in the record shows that prior to the geophysical exploration of defendant’s land leases in that vicinity were worth not less than $5 an acre. Defendant itself paid $5 per acre for the privilege of shooting certain acreage within its own lease block. It is true that the tracts were small and that generally the price for shooting privileges was fifty cents to a dollar per acre. In view, however, of the importance defendant apparently attached to the information it was seeking by the geophysical survey of plaintiff’s property, and since defendant had paid $5 per acre for the privilege of shooting certain acreage within its own lease block, we are unable to hold that the judge erred in fixing a value of $5 per acre on the 734.5 mineral acres owned by plaintiff as the value of the lease or shooting rights thereon at the time of the shooting.
 

 The next item of damages claimed by plaintiff and allowed by the judge is $1625 for the loss of twenty-six head of cattle valued at $62.50 a head. Title to the cattle, if they can be located and identified, is given defendant.
 

 The contention of defendant is that the judgment for the loss of the cattle is based on pure speculation. The contention is not well founded.
 

 The evidence shows that plaintiff’s tract of land, comprising 2098 acres, was securely fenced and that the gates to the enclosure were kept locked at all times. The only time any gate was opened was immediately following the entry of defendant’s employees upon plaintiff’s land and during defendant’s geophysical operations thereon. During the time the gate was opened some of plaintiff’s cattle were seen outside the fence for the first and only time any cattle had been seen outside the enclosure. A check made by a veterinarian in July, 1944, prior to the entry of defendant’s employees on plaintiff’s land, showed a total of 206 head of cattle on the land. Another check made in September or October, after defendant’s employees had'
 
 *1023
 
 ceased operations . on plaintiff’s land, showed that 26 head of cattle were missing from the premises. No cattle had been sold or had died during the time elapsing between those dates. The evidence further shows that Frank R. Gibson, a member and the manager of the plaintiff partnership, and his wife, Mrs. Edith G. Gibson, made a careful search for the missing cattle inside the premises but could not locate them. Gibson also made inquiry of other persons in an attempt to locate the missing cattle, but was unable to obtain any information as to their whereabouts. The judge held that as in his opinion the evidence, both direct and circumstantial, clearly showed plaintiff’s cattle got out of the enclosure through the gate left open by defendant’s employees, defendant must be held in damages for the loss of the cattle. We concur in the holding. No question is made of the value of $62.50 per head placed by plaintiff upon the cattle. No effort was made to show that a lesser number than 26 head were lost.
 

 The last item of damages claimed by defendant and allowed by the judge is $1000 for depreciation on and damages to fences, trees, private road, crops and terrain of the premises, the entirety of which is owned by plaintiff. Defendant admits that the geophysical operations of its employees caused some physical injury to' plaintiff’s land, but defendant insists that the injury was merely nominal in character and that
 
 $200, which
 
 defendant tendered plaintiff, was adequate to cover the damage.
 

 Neither defendant r.or its employees were authorized by plaintiff to enter plain tiff’s premises for the purpose of conducting geophysical explorations or for any other purpose. The entry on plaintiff’s premises, therefore, was unlawful and constituted a trespass. This is not denied by defendant.
 

 The gate through which entry was made on plaintiff’s land was broken open. Two separate crews of defendant’s employees, on two separate days, invaded plaintiff’s premises. At least four trucks or other vehicles were operated by defendant’s enrployees on and over the land. Holes were drilled and stakes driven on the property, some of them in a private road located on the property. A total of seventeen shot points was made. All this was done by defendant’s employees under defendant’s direction in spite of the fact that plaintiff’s land was enclosed with a strong and adequate fence and that the property was legally posted with “No Trespassing” signs, including a “Private — Keep Out” sign, on the gate through which the entry of defendant’s employees was made.
 

 The unlawful entry made by defendant’s employees on defendant’s premises constituted a quasi offense for which the defendant, as their employer, is' answerable. Civ. Code, art. 2320.
 

 Under Article 1934 of the Civil Code, a party is responsible in damages for the
 
 *1025
 
 commission of a quasi offense. As was properly held by the Court of Appeal, First Circuit, in Lebleu v. Vacuum Oil Co., 15 La.App. 689, 132 So. 776, on rehearing, “where a party’s private property is taken possession of without authority of law or the consent or knowledge of the proprietor, as appears in this case, the complainant unquestionably suffers a flagrant violation of his property rights. It is impossible to believe that a person suffering such an injury would not, of necessity, be vexed and aggrieved. The violation of such rights would certainly react on his feelings. An offense or quasi offense of the character described could not fail to carry such a result. Damages of that nature are compensatory and come under the operation of article 1934, C.C.” In that case damages were allowed plaintiff for the unauthorized entry by defendant’s employees and installing on plaintiff’s property a Torsion Balance machine for the exploration of minerals.
 

 In the assessment of damages for an offense or quasi offense much discretion is left to the judge, but the damage must be certain and the discretion is exercised only as to the extent thereof, to be ascertained from all the facts and circumstances. Angelloz v. Humble Oil & Refining Co., 196 La. 604, 199 So. 656. When all the facts and circumstances of this case are considered we do not find that the judge has abused his discretion in fixing the quantum of damages due plaintiff for defendant’s unauthorized prospecting operations on plaintiff’s land, or that the amount awarded plaintiff therefor is excessive.
 

 The judge declined to allow plaintiff any recovery for the remaining three items of damage claimed by it. In its answer to the appeal, alleging that the judge erred in failing to award judgment for these additional items, plaintiff prayed that the judgment be amended in that respect.
 

 As to plaintiff’s claim for loss of value for mineral leasing purposes of 1363.5 acres, the reversionary rights to which were owned by plaintiff, at $5 per acre, and the loss of value for mineral royalty purposes of the same acreage, the reversionary rights to which are owned by plaintiff, at $25.00 per acre, the judge assigned as his reason for rejecting plaintiff’s claim that the reversionary rights vested in plaintiff were too uncertain. The value of the rights themselves could not possibly be determined and the possibility of leasing this acreage or selling the royalty thereon, if and when it reverted to the plaintiff, was entirely too speculative to form the basis of an award for damages. As pointed out by the judge in his written reasons for judgment, “generally speaking, under the present law, these mineral rights would revert to the owner of the fee after the ten years of non-use. However, by use, these rights might never revert to the owner of the fee and for that reason and for the reason that there is no way of determining whether this acreage might be leased or royalty sold thereunder at the
 
 *1027
 
 end of the reversionary period, the court can not assess damages for any injury to that right.”
 

 The other item of plaintiff’s claim, which the judge refused to allow, is $18,-362.50 for the loss of the value for mineral royalty purposes of 734.5 royalty acres owned by plaintiff at $25 per acre. As to this item, the judge held there was no evidence showing that the royalty has any appreciable market value at the present time; that the geophysical survey made by the defendant did not detract from the value of the royalty, since no part of the royalty was taken from plaintiff and since it was not shown that defendant’s operations in any wise affected the present market value of this royalty. In his reasons for judgment the judge pointed out that the price of royalty is controlled solely by the demand. Its value remains the same. Unless the plaintiff could show that there was an immediate market value for this royalty, which plaintiff failed to do, any attempt to fix the price that might be obtained for the royalty in the future would be based upon pure speculation and could not form the basis for any award in damages.
 

 Our conclusion is that the judge did not err in rejecting plaintiff’s above mentioned claims for damages for loss of the value of its land for mineral purposes and for royalty purposes.
 

 For the reasons assigned, the’judgment appealed from is affirmed.