FOURNET, Chief Justice.
 

 The plaintiff, owner of various tracts ■of land in Richland Parish aggregating 7,566.89 acres, is seeking to recover damages in the sum of $189,172.25 ($25 per acre) from the defendant company for its alleged illegal trespass upon his property and upon the roads traversing and bordering his land, with the object of conducting geophysical explorations for mineral purposes, and for the alleged dissemination of the information thereby secured, to plaintiff’s injury. The defendant specifically denied any trespass, or that its acts caused damage to the plaintiff; but in any event pleaded the prescription of one year under Article 3536 of the Revised Civil Code of Louisiana. From a judgment in favor of the plaintiff, overruling the defendant’s plea of prescription and condemning it to pay the.sum of $37,834.45 ($5 per acre) as damages for its 'unauthorized geophysical explorations of plaintiff’s land, the defendant prosecutes this appeal.
 

 The plaintiff’s property, consisting of several entire sections and checkered tracts in various other sections, is situated in Townships 17 and 18 North, Ranges 8 and 9 East, of Richland Parish, and covers an over-all area measuring about 7 miles north and south by 6 miles east and west. The geographical center o-f his land is about four miles northwest, and the lower portion thereof about one mile due west, from the then known oil producing land in the Parish, the Delhi field. Traversing and bordering plaintiff’s land are parish public roads over which the State has only a right of passage, the minerals thereunder belonging to the plaintiff. It appears that for a period of at least ten days during the latter part of April and early May, 1946, surveying crews of the defendant
 
 *992
 
 company went upon this land and on the roads over it, and located thereon at least 22 reading stations, and that the stations thus marked were used by the defendant’s gravity meter crew in connection with its work. On May 4th plaintiff came upon one of these crews and objected to the explorations, whereupon work was stopped. On M&y 8th plaintiff addressed a letter to the defendant at its Shreveport office 'protesting the acts of defendant’s employees, and in reply thereto the defendant stated it considered it had sufficient authority to go upon the public roads for geophysical exploration by virtue of a permit from the Conservation Commission, but suggested that if damage had been done by an unauthorized act of its employees, any claim that plaintiff cared to submit would be given careful consideration. Before making any demand, however, on May 30th, plaintiff caused warrants to be issued for the arrest of four employees of the defendant company, charging them with unlawfully prospecting for oil.
 

 During this period the plaintiff had been approached by the Pan American Production Company for a mineral lease, and an offer was made to pay plaintiff $25 an acre plus a %th royalty, or $15 an acre with a 54th royalty, and an obligation to drill a minimum of three wells in either case, the lease to cover some 1,920 acres. The plaintiff preferred to receive $15 an acre with the 14th royalty, and a lease to •that effect was signed between the parties on May 31, 1946.
 

 Shortly thereafter, a conference was arJ ranged between the plaintiff, his farm managers and his attorney on the one side, and the defendant’s agents and' employees on the other, the purpose being to go thoroughly into the case to determine if there had been any trespass on plaintiff’s land and, if so, to discuss possible damage. This conference was finally held during September but apparently no satisfactory settlement was reached and this suit followed. The trial in the criminal prosecution resulted in conviction in the lower court, which was reversed on appeal. See State v. Evans, 214 La. 472, 38 So.2d 140.
 

 The principal basis for plaintiff’s claim for damages is that Pan American had knowledge and information of the results of the survey, so that negotiations were to the great disadvantage of plaintiff, who. as a result suffered damages to the extent of $25 per acre. The plaintiff also claims that the fact that the property had been surveyed • for mineral purposes “soon became known to the public generally, thereby condemning petitioner’s land as potential oil and/or gas producing property..”'
 

 The defendant, in answer, denied the trespass, but it now practically admits the wrongful taking of information that might throw light on the prospect of discovering oil or gas; however it contends, both in argument and in brief, that it took from the-•plaintiff nothing of value because the survey was never completed, having been terminated immediately upon plaintiff’s
 
 *994
 
 protest; and that this partial survey, by an instrument useful only for preliminary reconnaissance, stopped before it had been extended to the point of being the basis for any scientific deduction, can have no value.
 

 That the right of exploration is a valuable property right belonging exclusively to the owner, and, if wrongfully exercised, that it is a proper element to be considered in the award of damages, has been recognized and applied by this Court in the cases of Angelloz v. Humble Oil & Refining Company, 196 La. 604, 199 So. 656; Layne Louisiana Power Company v. Superior Oil Co., 209 La. 1014, 26 So.2d 20; and Holcombe v. Superior Oil Co., 213 La. 684, 35 So.2d 457. In the Angelloz case, supra, we pointed out that the jurisprudence clearly shows that compensatory damages only may be allowed to a person against whom an offense or quasi offense has been committed, and that the damage must be certain; that the “judge has discretion only as to the extent thereof, which, of course, must be ascertained from all of the facts and circumstances of the case under consideration.” [196 La. 604, 199 So. 658.]
 

 In fixing the quantum of damages, the trial judge stated that “It should be based on the actual value of the information taken, together with any damage that may have been done to the lease value of the land,” and found that “The evidence does not show any exact amount by which the lease value has been reduced by reason of the operations carried out by defendant.”" Our examination of the record shows that the plaintiff has failed completely to prove-any dissemination of the information obtained through the survey, and the mere-fact that Pan American selected acreage over which this survey was made, of itself proves nothing. Four officers of that company testified that they had no- gravity meter information, and that the reason the-company decided to purchase leases in the area was in hope of production from-another pinch-out type of structure similar to Delhi that is not reflected in gravity meter explorations. If the plaintiff is serious in his contention that the fact that his property had been surveyed caused it to be condemned as potential oil producing property, on which he offers no proof, an examination of his own testimony shows that the reason more of his land was not leased during the short period of activity in the area is that the plaintiff insisted on-his own terms,-which were not acceptable-to others. The record further discloses, that the plaintiff received the top price paid for leases thereabout, considering the-value of three wells and a 14th royalty; and reveals that upon completion of the-three wells drilled on plaintiff’s land under the Pan American lease, not one of which was productive, activity in the area subsided. Other persons who acquired leases-in the vicinity during the period testified that the results of these explorations would not have been of interest to them, had they known, because of the type sand they were seeking in this wildcat territory.
 

 
 *996
 
 While the award of the trial judge in fixing damages under Article 1934 of the Revised Civil Code, clause 2 of Paragraph 3, is largely in his discretion and ordinarily will not be disturbed, an examination of the record, in our opinion, shows that under the facts here the award was excessive. It is true that there is no evidence to show what this geophysical exploration was worth, and that in- the case of Layne Louisiana Power Co. v. Superior Oil Co., 209 La. 1014, 26 So.2d 20; this Court did consider the price paid for leases in the immediate vicinity in fixing damages; but in the Layne case the purpose of obtaining nearby leases was solely to gain geophysical information and the defendant itself had paid the price of $5 an acre for the privilege of shooting adjoining acreage, which was therefore held to be the proper measure of damages —whereas in this case the property in the vicinity was leased for the purpose of drilling. We should therefore seek a more exact measure of damages.
 

 The only evidence in the record by which the value of this geophysical survey can be gauged is -that offered by the Atlantic Refining Company. Early in 1945 that company sought a geophysical option on plaintiff’s land, the offer being $1 per acre for the right to do seismograph or other type of geophysical exploration for a period of one year. While it is true that the offer contained the additional privilege of selecting 3,000' acres at $10 per acre, the real purpose of the $1 bonus was to obtain the desired mineral information, on the basis of which the company would exercise its option to select the most promising acreage for drilling a test well. The fact that the plaintiff rejected the offer, as well as other such offers (according to his testimony), and was interested only in production, does not establish the value of the geophysical survey herein.
 

 We are not impressed with the defendant’s protestation that it is not liable in damages (1) since the survey was never completed, and (2) since the results of gravity meter readings are worthless in trying to locate a pinch-out formation or trap such as was being sought in the locality — the instrument being useful strictly for general reconnaissance to indicate some deep seated structural movement in the earth. The information gained from such surveys certainly has some value, it was here obtained without the plaintiff’s permission, and must have been sufficiently complete to give certain desired information since the defendant admits that the readings were correlated and evaluated in its Shreveport office, then later submitted to a consultant for examination. So far as the record discloses, the defendant did not seek leases in the locality, and this might well be due to the fact that the in- ' . formation obtained through the exploration gave no promise of structure productive of oil or gas. It is clear that the findings are of some assistance in determining whether land is suitable for further exploration and for drilling purposes, and the very fact that the defendant spends large sums in gathering such information
 
 *998
 
 demonstrates the inconsistency of its contention.
 

 Giving due consideration to all of the facts presented in this case, we do not think the evidence will support an award of more than $7,500.
 

 The defendant’s plea of prescription is clearly without merit. Suit was filed on May 2, 1947, within a year of the last alleged acts of trespass and exploration. The series of readings formed a continuous wrongful taking of information, each one without value in itself and presenting a readable picture only upon completion.
 

 For the reasons assigned, the judgment of the District Court is amended by reducing the award to $7,500, and as thus amended it is affirmed.
 

 HAWTHORNE, J., takes no part.