ELLIS, Judge.
Plaintiff filed suit on August 17, 1961 for damages resulting from a trespass by the defendant on Lot No. 5 owned by him in West Harding Heights Subdivision.
Plaintiff made the following factual allegations : That on or about the 20th day of May, 1961 the defendant commenced the construction of a sewer pumping station on Lot 4 for the City of Baton Rouge, which was the adjoining lot to petitioners, and shortly thereafter the defendant and/or his employees began using plaintiff’s lot for their own purposes without the plaintiff’s consent; that the defendant used the lot to store equipment, park heavy equipment and placed vehicles, large pieces of pipe and other objects on the lot; that large rats were created by heavy equipment, trees were pushed down destroying the beauty of the lot, small buildings, tool sheds and an outdoor toilet were placed on petitioner’s property by defendant’s employees. Plaintiff further alleged he mailed a letter to the defendant on July 26, 1961 requesting him to remove the objects from his premises which defendant ignored.
The defendant answered, admitting he began to use petitioner’s lot for his own purposes without petitioner’s consent, alleging he was of the opinion the lot in question belonged to the city; he admitted receiving the letter notifying him to remove all of the heavy equipment and buildings from the premises on July 26, 1961. Defendant also admitted telephoning the plaintiff on or about July 29, 1961 admitting a number of acts of trespass and assuring the petitioner the objects would be removed.
The case was duly tried on May 8, 1962, argued and submitted. The Court rendered judgment in favor of the plaintiff and against the defendant for oral reasons assigned in the sum of $1250.00 together with expert witness fees in the sum of $50.00 to be taxed as costs, defendant to pay all costs of the proceedings, together with legal interest from date of judicial demand. The defendant perfected a sus-pensive appeal from this judgment.
The defendant concedes the only question is one of quantum.
In dealing with the question of quantum, the Trial Judge in his reasons for judgment stated as follows, to-wit:
“His property has been damaged. Its sale value has been damaged. It’s damaged if he keeps it and doesn’t sell it, and wanted to live on it. He’s entitled to be paid for the damage he suffered. The next question is how much? I can’t take the $3,000.00 he got for the sale of the lot to the City because it was a forced sale. I don’t know what Mr. Campbell would have charged for *311 his lot under a conventional sale. That wasn’t brought out. That could have a very material bearing on this lawsuit, what it was actually worth. The small shrubbery, vines, things of that nature, eventually, of course, will grow back themselves. They could be planted but it costs money to plant them along the fence next to the pumping station. It would shield it and cut the view off from the lot involved in this lawsuit. The plaintiff is entitled to some damage for the mere fact of trespass on his property, for embarrassment, trouble, worry and uncertainty.
“The Court feels like $1,250.00 would be a fair and just and equitable valuation for the damage plaintiff has suffered. I almost have to reach up in the air and take an arbitrary figure. The testimony as to the trees that were cut or killed was so uncertain and indefinite, it’s hard to arrive at a value per tree. The evidence as to how many trees were destroyed is too uncertain.”
The defendant contends the trial court was in error in fixing the amount of the judgment because the evidence concerning the number of trees and their value per tree was too uncertain. He argues only compensatory damages and not punitive damages may be recovered in an action for tort or for damages to property, citing Breaux v. Simon, 235 La. 453, 104 So.2d 168; Layne Louisiana Company v. Superior Oil Company, 209 La. 1014, 26 So.2d 20. Plaintiff, on the other hand, contends there is ample authority for the award granted by the District Court, citing Oglesby v. Town of Winnfield, La.App., 27 So.2d 137, and Loeblich v. Garnier, La.App., 113 So.2d 95.
Plaintiff introduced the testimony of Emmett E. Batson, an expert in the Nursery business, concerning the actual damages to the property. Briefly, he testified there were 60 cubic yards of top soil which would have to be replaced at $10.00 per cubic yard, totalling $600.00 and regrading would cost $150.00. He compared the two sides of the lot, one part being heavily wooded and the other almost bare of all trees except a few damaged ones, and testified this damaged portion, which was about 50 feet at the widest point and 30 feet at the narrowest margin, contained approximately 70 trees destroyed which had an average growth of 5 inches in diameter. His estimate to replace the trees was $100.00 per tree, totalling $7,000.00. He further testified 18 trees had root damage caused from the bulldozer which would necessitate expenditures of $225.00 to repair. He counted seven trees which were girdled, ruined, or knocked down, estimating the replacement cost to be $1,305.00. He also found 18 trees with injured bark or limbs and trees which were likely to die later on, estimated the value of these trees at $500.-00, and included the replacement of vines and shrubbery in the sum of $150.00. The amount of his estimate of the damage to the lot, which was based upon the cost of replacement by a nurseryman, was $10,290.-00. Although the number of trees actually removed from plaintiff’s lot was not established with absolute certainty, it was shown the plaintiff’s lots were heavily wooded with a growth of small trees ranging from two inches in diameter up to seven or eight inches in diameter, and there were several twelve inches in diameter or larger which were injured or cut down as a result of defendant’s trespasses.
Defendant introduced the testimony of a Mr. Bobie T. Chapin who qualified as a landscape expert in horticulture and whose firm was employed by the City of Baton Rouge to landscape the lot on which the pumping station was erected. He did not examine the lot in question thoroughly at the time he saw it prior to the construction and testified it was a typical wooded lot. His purpose in testifying for the defendant was to establish the actual cost of restoring the plaintiff’s property. He thought it would cost $60.00 to treat the tree wounds on the remaining trees and $100.00 *312 to reg'rade the lot. The largest item he found necessary was approximately $383.00 to replace the hedge along the portion of the lot adjacent to the pumping station. Under cross examination he admitted he did not make an estimate of the trees which were cut on the lot since in his opinion they would have very little esthetic value without an existing building within view of them. He also admitted he did not take into consideration a large 12 inch oak which had been girdled by the defendants, caused by wrapping a cable around the tree and attaching it to a bulldozer which was stuck in the mud and attempting to remove the bulldozer from the mud.
It was established, and was not contested, that although no soil was removed from plaintiff’s lot, large ruts were dug by the heavy equipment which were covered over with the sandy clay soil which was apparently removed from the large hole dug to contain the sewerage pumping station equipment on Lot 4. Mr. Chapin estimated it would cost $483.00 to regrade the land and replace the hedge, which did not take into consideration the top soil nor the trees damaged or destroyed.
Plaintiff’s expert testified approximately 60 cubic yards of top soil at $10.00 per yard or a total of $600.00 would be needed to replace the top soil ruined by this sandy clay. This is an item of damage not considered by the lower court, but both the experts testified the sandy clay soil was not as fertile as the original top soil.
The loss of the trees would decrease the value of plaintiff’s lot as a site for a residence. It is sometimes difficult to fix a valuation of such trees because of the various factors which must be taken into consideration. In the case of Oglesby v. Town of Winnfield, 27 So.2d 137, at page 143, the court stated the problems succinctly as follows, to-wit:
“Referring to the quantum of damages to which the aggrieved owners had suffered, the shown values of the trees, times for new growth of limbs, etc.,, the court appropriately said:
“ ‘It does not put a value on the disappointment, mortification and other sufferings of the plaintiffs, as such things cannot be said to be measurable and appreciable in dollars, though,, where there has been a mental endurance, some adequate pecuniary compensation must be made.
“ ‘The Code provides that, in cases of unlawful deprivation of some legitimate gratification, although the same are not appreciated in money, yet damages are due. R.C.C.1934; 4 Ann. 440; 10 Ann. 33.’ ”
In the case of City of New Orleans v. Shreveport Oil Company, Inc., et al., 170 La. 432, 128 So. 35, the plaintiff was granted a judgment in the sum of $750.00 for the destruction of an oak tree measuring 2i/j> feet in diameter.
Based upon the above cited authorities, a value of $500.00 for the damage to these two trees which were proven to have been on plaintiff’s lot prior to the construction together with other smaller trees that obviously were destroyed, would be entirely reasonable. The facts in the case at bar also indicate the property lines were clearly visible to the defendant and he knew or should have known the city did not own the lot adjacent to the one upon which he was constructing the pumping station. This was clearly brought out by the testimony of a Mr. Sanders who lived on Lot 3 in the same subdivision adjacent to the pumping station. He testified a crew of men came in and cleared off Lot 4 and the lot had been surveyed and a distinct mark placed down each boundary line. The facts convict the defendant of willful, wanton and deliberate trespass on plaintiff’s property.
We therefore find the defendant did make a willful and illegal trespass on plaintiff’s property and continued to do so despite being warned by the plaintiff to dis *313 •continue these trespasses. Under the authority of Loeblich v. Garnier, La.App., 113 So.2d 95, the trial court would have been also justified in awarding damages for the wrongful and forceful invasion of the plaintiff’s property rights and for his mental anguish, humiliation and embarrassment.
The evidence clearly supports the award made by the lower court. Accordingly, the judgment of the lower court is thereby affirmed.
Affirmed.