297 So.2d 283 (1974)
Rosalie FASSITT, wife of and George Fassitt, Individually for their minor children, et al.
v.
UNITED T. V. RENTAL, INC., et al.
No. 5866.
Court of Appeal of Louisiana, Fourth Circuit.
June 28, 1974.
*284 Galen S. Brown, New Orleans, for plaintiffs-appellees.
J. Stuart Douglass, New Orleans, for defendants-appellants.
Before REDMANN, LEMMON and SCHOTT, JJ.
LEMMON, Judge.
United T. V. Rental, Inc. has appealed from a judgment which awarded George Fassitt damages for a tortious trespass committed by United's agents in the course of repossessing a rented stereo phonograph from the Fassitts' home. The principal issues in United's appeal are (1) whether the language of the written lease contract authorized the otherwise illegal entry into the Fassitts' home and (2) whether the evidence supports the award of damages.
Mr. and Mrs. Fassitt, contending they had entered into an agreement to purchase the set, had originally sought to recover damages for breach of the contract, as well as damages for the trespass. By answer to the appeal, the Fassitts seek the return of all sums paid under the contract and additional damages for breach of contract, as well as an increase in tort damages.
Mrs. Fassitt testified she telephoned United and was quoted terms of $7.35 per week to rent the phonograph, with the understanding that she could "take out an option" after three or four months and that the set would belong to her after 15 months of payments. United delivered the set the dame day, whereupon Mrs. Fassitt signed a form contract entitled "Rental Agreement," which began with the statment in bold print that "THIS IS A RENTAL AGREEMENT ONLY."
The contract provided for a week-to-week rental term and for termination upon failure to make timely rental payments in advance. Other pertinent contract provisions included:
"TITLE: Title remains at all times in the owner. The renter receives use and possession of the property for successive one-week terms so long as weekly rental *285 payments are made on or before the date due and renter complies fully with all agreements and conditions hereof and unless this agreement is terminated as provided herein.
"OPTION: The Renter shall have the option to purchase the above described property at its suggested retail price, including interest to date at the legal rate, and state and federal tax, provided that Owner is notified by registered mail within thirty (30) days from date of the execution of this agreement. In such event, Owner agrees to apply the amount of rent received against the purchase price, and the balance of purchase price becomes due in full. Otherwise, the above described property shall be considered as rental property and may be purchased by Renter at such price and upon such terms and conditions as may be agreed upon between Owner and Renter."
United first delivered a used set, but upon Mrs. Fassitt's request sent a new one the following week. Mrs. Fassitt then executed a new agreement, identical to the first except for the date and serial number.
Mr. Fassitt, who did not sign either contract, testified that he was present when the second set was delivered and that he confirmed with United's employee the arrangement for ownership of the set by paying $7.35 weekly for 15 months. He further testified that the same employee made the weekly collections and several times assured him he would ultimately own the set simply by making the weekly payments.
The employee was present in court but was not called to testify.
Ten months after the contract was executed, when the Fassitts had not timely paid the weekly rental charges, United repossessed the set by sending agents to the Fassitts' home to pick up the unit. United did not utilize any judicial process, nor did United or its agents obtain, or attempt to obtain, consent from the Fassitts to enter their home. The Fassitts' 11-year old daughter, who at the time was alone in the home, testified that three men entered through an open door without knocking, gave her a business card, and removed the set.

CONTRACT
It is factually undisputed that the Fassitts did not exercise the contractual option. The Fassitts contend, however, that they intended to purchase the set from the time of the initial inquiry and that they were induced to sign the form contract by misrepresentations that they would acquire ownership simply by making the scheduled weekly payments. In effect, the Fassitts contend they contemplated what amounts to a conditional sale. On the other hand, United argues the contract should be enforced as written, a simple rental contract which expired by its own terms.[1]
The trial judge found that the contract was plainly a rental agreement and that Mrs. Fassitt, an apparently intelligent person, was not deceived into believing she purchased the set by simply signing the contract, but was aware she needed to "take out an option," which was never done.
We view the key issue concerning the contract as one of assessing the preponderance of the evidence. The Fassitts' evidence in support of their position that their consent to contract was obtained by misrepresentations is extremely weak.
Mrs. Fassitt's testimony as to United's representations is not inconsistent with the *286 terms of the contract she signed. The trial judge observed she apparently understood the transaction, and the contract itself was not misleading in any manner. The apparent problem is that Mrs. Fassitt did not fully comprehend the significance of the option and procedure for exercising it within a specified time, but the contract clearly outlined the significance and procedure, and she did not even hint in her testimony that any different representations were made.
The import of Mr. Fassitt's testimony was that the employee-collector led him to believe he would attain ownership simply by making weekly payments. While the collector did not testify to contradict Mr. Fassitt's assertions, his wife's testimony is not supportive of (and the plain language of the contract contradicts) his version of the transaction.
The Fassitts also argued in this court that United utilized misleading radio advertising, which was calculated to give the impression that title automatically transferred after 15 months of renting a unit. However, while transcripts of the commercials were introduced into evidence, neither Mr. nor Mrs. Fassitt testified that they relied on the representations made in the commercials or that they ever heard the radio advertising.
The plain and unambiguous terms of a contract normally determine the obligations of the contracting parties, although courts will grant relief when a party proves his consent to a contract was obtained by misrepresentation or by fraud. Some of the language of the radio advertising, such as "all the rent money you pay goes toward the purchase price," was the language of purchase on credit. This language was inconsistent with the contractual provision which gave an option to purchase only for 30 days and only then by paying the balance in cash. To a person in so low an economic status that he had to obtain ownership of a phonograph by a transaction with no down payment and small weekly installments collected at his door, the contractual option was really an illusory right. Nevertheless, we can only rule on the record before the court, and on our record we must conclude the Fassitts failed to prove their consent to the rental contract was obtained by misrepresentations. We must therefore construe the contract according to its terms and conclude ownership of the set never passed to the Fassitts.

TRESPASS
Inasmuch as we have decided that the agreement was for rental of a movable, and since the rental contract had terminated by its own terms, United had the right to possession of the set. Damages were awarded, however, not because United repossessed the set, but because of the manner in which United took possession.
As to the trespass, United contends that unauthorized entry is an essential element of the tort and that the entry in this case was authorized. United relies on the following contractual provision:
"OWNER'S RIGHT TO ENTER AND TAKE POSSESSION: The owner and its agents, upon the termination of this agreement, are specifically authorized to enter upon any premises where the property may be found and to take possession of and remove the property without liability, and owner and its agents are hereby released and discharged from any claim or cause of action in or relating to entry and taking possession and renter agrees to indemnify owner and its agents for all costs, expenses, and damages occurring directly or indirectly from or related to the taking possession and the removal of said property."
In denying a new trial, the trial judge stated he found no authority as to the validity of including in a Lease contract the authority to enter a home to repossess the leased item, but expressed his reaction that a deputy sheriff, rather than a detective agency, should perform the task.
*287 We find no distinction between illegally entering upon the property of another to take possession of a leased item or of one sold under a chattel mortgage. In either case the unauthorized entry is the act which gives rise to the tort. We therefore believe the question of trespass turns on a determination of whether the entry was authorized.
The quoted contract provision is essentially a waiver of the Fassitts' right to privacy in their home. The courts have always indulged every reasonable presumption against waiver. See Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177 (1937), as cited in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L. Ed.2d 556 (1972).
Public policy cannot condone the use in a sale or lease contract of a provision irrevocably authorizing entry into a debtor's or lessee's home without judicial authority or without the owner's consent at the time of entry. We decline to construe the quoted provision, incorporated into a printed from contract as a necessary condition of the agreement, as irrevocable permission to enter a private home at any time, day or night, occupied or unoccupied, under any circumstances. Law and order cannot allow such a construction, which would tend to encourage breaches of the peace.
We therefore conclude that the contractual authority relied upon by United is insufficient to legitimate an otherwise illegal entry.
The trial judge awarded $500.00 to Mr. Fassitt, individually and as head and master of the community, but denied damages to him on behalf of the child and to Mrs. Fassitt.
There was no proof of any pecuniary loss. The trial judge stated he found no tort in the physical activity on the premises, but awarded damages to the community for "a technical tort committed to their sort of family relationship, the household in general, without regard to their particular person."
The common law allows nominal damages for every trespass and punitive damages for trespasses which are intentional, willful or wanton. Restatement (Second) of Torts § 158 (1965). Punitive damages are not allowed in Louisiana. However, compensatory damages in this state may include awards for mental anguish and embarrassment caused by the intentional violation of property rights, even if the violation causes no pecuniary damage. Loeblich v. Garnier, 113 So.2d 95 (La.App. 1st Cir. 1959).
In Grandeson v. International Harvester Credit Corp., 223 La. 504, 66 So.2d 317 (1953) defendant sold plaintiff a refrigerator under a chattel mortgage and, on plaintiff's default in payment, repossessed the item extrajudicially from plaintiff's home in his absence. In answer to defendant's contention that no damages were proved, the Supreme Court stated:
"Such action (the trespass) was embarrassing and humiliating and brought on mental anguish. Therefore, as to these facts, it is self-evident that damage was sustained, * * *."[2]
The court affirmed an award of $150.00 as "fair, in the light of plaintiff's failure to establish specific injuries which would justify a greater award."
After examining this and other trespass cases in which no pecuniary loss *288 was involved, we conclude the award of $500.00 in general damages was within the "much discretion" vested in the trial judge by C.C. art. 1934(3). However, inasmuch as the tort was inflicted upon the persons who sustained the mental anguish, embarrassment and humiliation, we amend the judgment so as to award this amount of damage to Mr. Fassitt individually, rather than to the community.[3]
For these reasons, the judgment of the trial court is amended to grant the award only to George Fassitt, individually. As amended, the judgment is affirmed.
Amended and affirmed.
NOTES
[1] United's manager testified that United's business was almost entirely a rental business; that he only remembered one occasion on which the option had been exercised; and that when a television, phonograph or air conditioning unit became economically unfeasible to maintain for rental purposes, United donated the unit to religious or charitable institutions.
[2] In effect the court held that the deliberate invasion of a person's home necessarily causes humiliation, embarrassment and mental anguish, even if the person does not pronounce his sufferings in these magic words from the witness stand. See also Layne Louisiana Co. v. Superior Oil Co., 209 La. 1014, 26 So.2d 20 (1946).

In Van Wren v. Hugh Flynn, 34 La.Ann. 1158 (1883) the Supreme Court further observed that invasion of a man's home is a gross outrage "for which courts of justice must either grant redress or sanction the personal exaction of satisfaction by violence."
[3] Mrs. Fassitt did not appeal from the dismissal of her action, and that judgment of dismissal is now definitive. Furthermore, Mrs. Fassitt's attempted answer to the appeal was ineffective. An answer to the appeal can only avail an appellee of relief, and Mrs. Fassitt was not an appellee.