JONES, Judge.
Defendant appeals a judgment awarding damages against it for trespass. We reduce the award and as modified, affirm.
Plaintiff owns on the north side of U.S. Highway # 167 (referred to as Pershing Highway in plaintiff’s title) in Jonesboro, Louisiana, two lots described as follows:
“Beginning 580 ft. North and 132V2 ft. East of the SW/c of NE xk of NW Vi Sec. 31-15-3 West, and running 624 ft. due East, thence North 134 ft., thence run West 100 ft. for a starting point, thence run South to the North R/W line of Pershing Hwy., thence run Northwesterly along and with said R/W line to the East line of Alley running North and South, thence run North 50 ft., thence East 50 ft. to the starting point.
“Lot beg. at SE/c of Lot 10 of Blk. 2, McDonald Add. thence run South 20 ft. for beg; thence West 75 ft. South of R/W of Pershing Hwy., thence East with Hwy. about 75 ft. to point due South of beg., North to beginning.”
Plaintiff contends the south line of her lots is the north edge of the pavement of the highway.
*1097 Defendant, while widening the highway, built a drain basin on the south portion of each of plaintiff’s lots connected by a 15 inch pipe and constructed a curb and gutter along the front of plaintiff’s lots. This work activity was established to have been on the south I8V2 feet of plaintiff’s property if the south line of her property is the north edge of the pavement. Plaintiff obtained an injunction against defendant prohibiting defendant from encroaching upon her property. Following this injunction defendant continued the work activity and completed construction of the drain basins, curbs and gutters. Plaintiff filed a contempt proceeding to enforce the injunction judgment, and in connection with the contempt proceedings defendant removed the items constructed on the property and restored it to the same condition it was prior to commencement of construction with the exception defendant did not replace blacktop removed from the area in front of plaintiff’s 50 foot lot.
At commencement of widening activities there existed a 24 inch culvert under the highway in front of plaintiff’s 75 foot lot. This culvert carried water collected in an underground drainage system on the south side of the highway to the north side. The underground system collected through surface catch basins rain water falling on property located on the south side of the highway for a distance of approximately 200 feet to the east. Plaintiff’s lots were subject to a servitude of natural drain to higher elevated property to the east. Prior to trespass plaintiff installed an underground pipe on her 75 foot lot and connected it with the culvert on the north side of the highway. Through this pipe the water from the south side of the highway drained into a ditch located on the north end of plaintiff’s 75 foot lot. Defendant replaced the 24 inch culvert with a 15 inch pipe and reconstructed the three catch basins located on the south side of the highway. The evidence established there was no significant increase in the water flowing through the replaced basins' and through the new 15 inch pipe which defendant connected to plaintiff’s pipe when the 24 inch culvert was removed.
The trial court found defendant had trespassed upon plaintiff’s property and awarded the following damages:
Rent $ 757.51
Replacement of cost of blacktop 369.00
Taking of drainage servitude 1250.00
Damage to lot caused by the drainage servitude 1000,00
$3376.51
Defendant asserts its right-of-way in front of plaintiff’s property was 18 feet or more north of the paved portion of U.S. # 167 and all work was performed within the right-of-way. Defendant further contends plaintiff failed to prove any damages for which she received judgment.
Defendant admits there is no formal written right-of-way grant of record and offered no proof it actively used or maintained any area beyond the north edge of the 18 foot hard surface highway.
Defendant introduced in evidence a survey made in April, 1977 in an attempt to show the south line of plaintiff’s lots did not extend to the north edge of the pavement. Defendant contends plaintiff’s south line is its north right-of-way line as shown on a plat of this survey to be at its widest point more than 30 feet north of the paved edge of the highway. The plat shows the former location of the two drainage basins, connecting pipe, curb and gutter, and the area where plaintiff’s blacktop- was removed, to be within the right-of-way. Defendant’s engineer testified all construction activities in connection with these improvements were performed within the right-of-way as reflected on the plat. The engineer, under whose supervision the survey was made, testified the north right-of-way line shown on the plat was established by following the calls in a correction deed dated July 31,1939, wherein plaintiff’s ancestor in title acquired a lot having frontage of 155 feet on Pershing Highway which included the 50 foot lot belonging to plaintiff. This deed did- not contain any provision dedicating a right-of-way. Defendant contends plaintiff’s ancestor in title impliedly dedicated a right-of-way as shown on the plat *1098 because the call from the northwest corner of the lot, which is established by the survey, provided the south line of the lot was the highway 50 feet south of the northwest corner of the lot. The corrected description contained in this correction deed was as follows:
“Beginning 580 feet north and 132V2 feet east of the Southwest corner of the NE Vi of NW Vi of Section 31 Tp. 15 N. R. 3 West, and running 624 feet due east, thence North 134 feet for a starting point, thence due west 150 feet, thence south 50 feet, more or less to the right of way of the Pershing Highway, thence southeast along the Pershing Highway a distance of 155 feet, thence North 90 feet, more or less to the starting point.”
The surveyor explained when he arrived at the northwest corner of this lot he proceeds south 50 feet and at this point he found the north right-of-way line of the highway represented by an imaginary line parallel to the center line of the paved portion of the highway. As set forth in the description this call reads:
“ * * * thence south 50 feet more or less to the right-of-way of Pershing Highway.”
The engineer testified with a call of this kind proper surveying practices required him to measure 50 feet and stop, rather than proceeding south to the paved edge of the highway. However, under cross-examination, he seems to acknowledge the proper practice in measuring calls of this kind was to proceed beyond the designated feet in the call to the monument which in this instance would have been the north edge of the paved surface of road.
The trial judge gave as one reason for rejecting the north right-of-way line of U.S. # 167 as established by this survey the failure of the engineer to follow the correct practice of proceeding to the monument on the call rather than stopping at 50 feet and declaring that to be the right-of-way line. The trial judge was correct holding, that the monument takes precedence over distance in a description. Meyer v. Comegys, 147 La. 851, 86 So. 307 (1920). The deed defendant used in the survey does not support the location of defendant’s right-of-way north of the edge of the pavement as shown on its plat.
Defendant contends a plat of McDonald Addition to Jonesboro, recorded February 16, 1924 by plaintiff’s ancestor in title, which shows a “model road”, (now U.S. # 167) constitutes a legal dedication within contemplation of LSA-R.S. 33:5051. Defendant argues the road dedicated thus would place the north right-of-way line of U.S. # 167 where it was established by the survey prepared in 1977. This argument that the road was formally dedicated by recordation of the McDonald plat was made in Wilson Motor Co. Inc. v. McDonald, 69 So.2d 91 (La.App., 2d Cir. 1953) and there rejected. In refusing to hold the road dedicated, Wilson points out the road shown on the map was not adjacent to a large part of McDonald property included within the subdivision, although located on McDonald property, and the road was shown only with dotted lines and had been in use for many years prior to recordation of the plat. Defendant states Wilson is no longer the law, citing Chevron Oil Company v. Wilson, 226 So.2d 774 (La.App., 2d Cir. 1969). The Chevron case holds the fact the road was in existence when the plat was recorded does not preclude the road from statutory dedication within provisions of LSA-R.S. 33:5051 when the property owner records the plat showing the road. Chevron requires the conclusion that by including the road on the McDonald plat it became statutorily dedicated by virtue of LSA-R.S. 33:5051. Considering statutory dedication occurred by recordation of the McDonald plat, this does not have the effect of establishing a dedicated right-of-way for the present U.S. # 167 because it is not located at the place shown on the McDonald plat. There is a factual finding in Wilson Motor Company v. McDonald, supra, that the present U.S. # 167 was moved north of the road location shown on the plat in 1932 when the state first paved it. This is confirmed by an examination of the plat which shows the road some distance south of the property later acquired by plaintiff.
*1099 In State of Louisiana, Department of Highways v. Whitman, 313 So.2d 918 (La.App., 2d Cir. 1975) an expropriation proceeding involving property approximately 150 feet west of plaintiff’s property, we held where the Highway Department had no recorded plat or instrument showing it owned any property beyond the paved portion of the road, its ownership was limited to the paved portion of the road.
The only right-of-way established by defendant is the 18 foot paved road. The calls in the descriptions of plaintiffs lot established her south line to be the north right-of-way line of the highway which is the north edge of the pavement. The record supports the finding of the trial court that defendant trespassed upon the south 18 feet of plaintiff’s lot.
DAMAGES
Defendant failed to replace blacktop removed from the south end of plaintiff’s 50 foot lot, and the record supports the trial judge’s award of $369 replacement value of the blacktop.
Plaintiff’s 50 foot lot was rented when the trespass occurred, and she continued to collect rent during the trespass. The 75 foot lot was not rented when the trespassing commenced nor does the evidence establish plaintiff was prevented from renting the lot because of the trespass. Under these circumstances the rent award is not supported by the record.
Defendant’s activities revising the drainage system did not increase to a substantial extent the water plaintiff received through her drain pipe prior to construction activities. Under these circumstances defendant has not taken a drainage servitude from plaintiff but rather left her receiving water due her estate by the servitude of natural drain through the underground drainage system by which she formerly received it. For these reasons the lower court’s awards to plaintiff for a drainage servitude and damages in connection with its location are not supported by the record.
We find plaintiff is entitled to an award of damages against defendant because of its willful and deliberate trespass upon plaintiff’s property without her consent. This trespass was aggravated by defendant’s continuation of construction upon plaintiff’s property after, being ordered to cease its encroachment. A property owner was recognized as being entitled to damages from a trespasser for invasion of his property rights in LeBleu v. Vacuum Oil Company, 15 La.App. 689, 132 So. 776 (1st Cir. 1926). See also Layne Louisiana Company v. Superior Oil Company, 209 La. 1014, 26 So.2d 20 (1946). We find the sum of $1500 is a fair and reasonable amount to compensate plaintiff for defendant’s invasion of her property rights.
For reasons assigned the judgment in favor of plaintiff is reduced from $3,376.51 to $1,869.00, and, as modified, affirmed at appellant’s cost.