Dear Representative Smith:
Our office is in receipt of your request for an Attorney General's Opinion regarding whether the Louisiana Department of Wildlife and Fisheries can impose an access fee of sixty dollars ($60.00) per acre to conduct seismic operations on wildlife management areas and refuges. Additionally, you ask, if such a fee can be imposed, whether the increase in the fee in 1996 was required to be pursuant to La. Const. Art. VII, Section 2.1
requiring enactment of a law by two-thirds of the elected members of each house in the legislature.
I have received a copy of the letter dated July 8, 1998 to you from James H. Jenkins, Jr., Secretary of the Louisiana Department of Wildlife and Fisheries. (Copy attached). For the factual basis of this opinion I am using the facts as presented in that letter regarding the history and practice of the DWF over seismic operations on wildlife management areas and refuges, as well as information I have received from discussions with personnel of the Department of Wildlife and Fisheries and the Department of Natural Resources.
To protect the wildlife and fisheries of the state, the Department of Wildlife and Fisheries has regulatory jurisdiction over all seismic activity occurring in the state, both over private and public property, including land and waterbottoms. La. R.S. 36:602, R.S. 30:214; LAC 76:I.301 et seq. Pursuant to regulation, the Department of Wildlife and Fisheries imposes certain restrictions on seismic activities and charges regulatory fees for the administrative and supervisory costs associated with its regulatory authority. The Department is the only state agency which regulates seismic activity throughout the state.
The State Mineral Board issues seismic permits allowing seismic activities on certain state property. La. R.S. 30:212 provides that "The State Mineral Board shall have exclusive authority to grant permits to conduct geophysical and geological surveys on state owned lands and water bottoms." La. R.S. 30:214 provides that this permit "shall be granted under the rules and regulations . . . promulgated by the Department of Wildlife and Fisheries for the protection of oysters, fish, and wildlife." Additionally, LAC 43:V.101(G) provides:
 Pursuant to R.S. 30:124 all permits will be issued subject to strict compliance by the permittee with all applicable rules governing the conduct of seismic exploration in water areas as such rules may from time to time be promulgated by the Department of Wildlife and Fisheries for the protection of oysters, fish, and wildlife. Further, all wildlife and waterfowl refuges, game and fish preserves, or oyster seed ground reservations or any part thereof, shall not be deemed to be included in the area covered by any permit unless written permission from the agency in charge of such refuge, preserve, or reservation is also secured.
While these statutes, and the regulations promulgated thereto, are not completely clear regarding the extent of its jurisdiction, the Mineral Board does not issue permits for seismic activities on the land portion of wildlife management areas and wildlife refuges. It is the policy of the Mineral Board to require permits for seismic activities occurring in state waters or on state waterbottoms located within wildlife management areas and refuges.
There are several methods by which wildlife management areas and wildlife refuges may be created. Several are private properties which have been donated, in whole or in part, to the Department of Wildlife and Fisheries or the Wildlife and Fisheries Commission (collectively "DWF"). Pursuant to the donations they are to be managed as wildlife management areas or refuges. The DWF may or may not have the mineral rights or even the ability to control mineral activities. These properties specifically name the DWF, rather than the state, as the donee. For purposes of this opinion these will be referred to as "Agency properties." Other properties, such as Rockefeller Wildlife Refuge and Marsh Island Wildlife Refuge, were donated to the State, to be preserved as wildlife refuges and managed as such by the DWF. For purpose of this opinion this second group of properties will be referred to as "State Wildlife Refuges." At least one other property, Pass-a-Loutre Wildlife Refuge, was created by the legislature out of certain vacant and unappropriated public lands belonging to the state. Acts 1921, No. 52, Sec. 1, (La. R.S.56:751 et seq.). The legislature granted the commissioner of wildlife and fisheries "absolute control and authority" over the use of this area. La. R.S. 56:752. Unlike "Agency properties," the "State Wildlife Refuges" and Pass-a-Loutre Wildlife Management Area were titled in the State.
In addition to the regulatory fees, and since at least the 1930's, the DWF has required an "access fee" or "right-of-use fee" from anyone desiring to conduct seismic operations on wildlife management areas or refuges. For large acreage tracts (8000 acre minimum) on wildlife refuges, exclusive right-of-use permits are competitively bid, allowing only one operator to conduct seismic operations. For other wildlife management areas and refuges, a nonexclusive right-of-use permit is granted in order of request by seismic operators. Unlike the exclusive right-of-use permit which is competitively bid, the nonexclusive permit, since 1996, is issued for sixty dollars per acre. According to the DWF, the sixty dollar per acre amount represents the fair market value for use of these properties for seismic operations, and is comparable to the price charged by private property owners.
For "Agency properties," only non-exclusive permits have been issued. The DWF has issued these permits and there has been no involvement by the State Mineral Board. Access to "State Wildlife Refuges" for seismic activities has been almost exclusively by public bid and issuance of exclusive seismic permits. Initiation of the public bid process on State Wildlife Refuges has usually been by the DWF, with the actual public notice and bid process by the State Mineral Board. Acceptance or rejection of bids has been by the Mineral Board, with active input from the DWF.[1] The Mineral Board signs and issues the exclusive permits. Prior to 1994 or 1995, the exclusive permit issued by the Mineral Board was drafted by the DWF, and the Mineral Board did not have an equivalent seismic access permit process for other state properties.
In 1994 or 1995, the State Mineral Board established "Exclusive Geophysical Agreements." These, when issued, are in lieu of the Mineral Board's regulatory permit.[2] These Agreements are subject to public notice and public bid and grant the permittee exclusive seismic rights to the affected property. Depending on the type of Agreement issued, the Board may not place the property up for lease and may grant the permittee the right to enter into a lease for the property for the consideration originally bid. With the exception of the Exclusive Agreement which grants leasing rights to the permittee, the State Mineral Board Exclusive Geophysical Agreement is similar in form to the DWF's exclusive seismic permit.
With regard to Wildlife Management Areas and Wildlife Refuges, there appears to be two levels of permission required to conduct seismic activities. One level is regulatory, as detailed in LAC43:V.101 et seq. for the State Mineral Board and LAC 76:I.301 et seq. for the Department of Wildlife and Fisheries. The purpose of fees at this level is to compensate the agencies for the services they provide in regulating the activity. The second level is the right-of-use permit required by the DWF. The purpose of this fee is not compensation for services, but rather provides compensation to the DWF for the value of the right to use the property for seismic activities.
The Mineral Board's Exclusive Geophysical Agreements appear to be a combination of both the regulatory permit and the access fee. On the one hand, it is issued in lieu of the regulatory permit, with at least a portion of the fee received compensating the Mineral Board for governmental services involved in regulating the seismic industry. On the other hand it is issued by public bid, which indicates the agency will receive fair market value for use of the property to conduct seismic operations. In this manner it is similar to the DWF's exclusive seismic access permit.[3]
Your first question asks whether the DWF has the legal authority to impose the sixty dollar per acre right-of-use seismic fee. Unlike the regulatory fees which provide compensation to the DWF for its administrative and supervisory costs associated with seismic activities, the right-of-use fee provides compensation to the DWF for the value of allowing seismic activities to occur on wildlife management areas and refuges. Answering this question entails determining whether a fee may be charged allowing access to wildlife management areas and wildlife refuges for seismic operations and whether the DWF is the agency authorized to set and administer the fee.
The right-of-use granted by the DWF is, in essence, the sale of a right-of-use of the landowner's property, which is a personal servitude, conferring in favor of one person a specific use over immovable property belonging to another person of less than full ownership. See La. C.C. Article 639. See also Yiannopoulos, Personal Servitudes Sec. 123 (1968).
The right to geophysically explore land for minerals, like the right to lease property for mineral development, is a valuable right belonging to the landowner, and one that is separate and distinct from the right to lease. This was recognized by the Louisiana Supreme Court at least as far back as 1946:
 . . . the right to geophysically explore land for oil, gas or other minerals is a valuable right. Large sums of money are annually paid landowners for the mere right to go upon their land and make geophysical and seismograph tests. The information obtained as the result of such tests is highly valuable to the person or corporation by whom they are made. If the information thus obtained be favorable, it can be used and is used in dealing with the landowner for his valuable mineral rights. If the information be unfavorable, the fact quickly becomes publicly known and thus impairs the power of the landowner to deal advantageously with his valuable mineral rights.
Layne Louisiana Co. v. Superior Oil Co., 209 La. 1014, 1020,26 So.2d 20, 22 (La. 1946). See also Jeanes v. G.F.S. Co., 94-739 (La.App. 3 Cir. 12/7/94), 647 So.2d 533.
La. Const. Article VII Sec. 14 provides, as a general rule, that ". . . the funds, credit, property, or things of value of the State or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private." As interpreted by the Louisiana Supreme Court, "this section is violated whenever the state or political subdivision seeks to give up something of value when it is under no legal obligation to do so." City of Port Allen v.Louisiana Municipal Risk Management Agency Inc. 439 So.2d 399,401 (La. 1983). This prerequisite can be satisfied by the presence of a valid statute or contract allowing the transfer. Additionally, the transfer must be for a public purpose and the state must be compensated for the value of the property transferred. Attorney General Opinion No. 90-651.
The statutes clearly authorize the state to allow seismic activity on state property. See, for example La. R.S. 30:206-216, R.S. 56:6(8) and (13), 752, and 798. The deeds of donation for the Rockefeller and Marsh Island Wildlife Refuges specifically allow seismic operations on the donated properties. Allowing seismic surveys on state land also meets the public purpose test by allowing the state to develop its natural resources. Finally, the state must be compensated for the value of the right to allow seismic activities on its property.[4]
The right to allow seismic operations on land is a valuable right of the landowner, in this case the state. It is therefore the opinion of this office that failure to charge for access to wildlife management areas and wildlife refuges for seismic operations would constitute a donation of public property in violation of Article VII, Section 14 of the Louisiana Constitution of 1974.
La. Const. Article IX Section 1, the Louisiana Public Trust Doctrine, provides that "the natural resources of the state . . . shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people." The Louisiana Department of Wildlife and Fisheries and the Wildlife and Fisheries Commission are the primary state agencies responsible for carrying out the state's public trust responsibilities over wildlife. Mouton v. Department of Wildlifeand Fisheries, 95-0101 (La.App. 1 Cir. 6/23/95),657 So.2d 622.[5] Additionally, La. R.S. 56:6(13) provides that the Wildlife and Fisheries Commission "shall protect and propagate, whenever possible all species of birds and game of whatever description, and shall establish preserves and hatcheries to be maintained and operated by the Commission." R.S. 56:6(18) provides that the Commission "shall protect game preserves placed under the control of the state, provided they are used for the propagation of birds and game, or as resting places for birds or game, and shall see that such preserves are properly posted according to the law."
Pass-a-Loutre Wildlife Refuge was established by legislative act in Acts 1921, Ex. Sess., No. 52, Sec. 1. (La. R.S. 56:751 et seq.). This Act gives the commissioner of wildlife and fisheries "absolute control and authority concerning the use of the lands" of the refuge. The acts of donation for the Rockefeller and Marsh Island Refuges provide that these properties "shall be forever hereafter dedicated, held and used as a wild life refuge or game preserve, owned and maintained as such by the State of Louisiana . . . clothed with all the protection afforded to such areas under the [wildlife and fisheries] laws of the State of Louisiana" The state was expressly represented by the Governor and the Commissioner of Conservation,[6] who both were signatories to the donations. This we believe indicates that the DWF was the agency intended by the donations to be responsible to ensure that the properties were maintained as refuges as required under the conditions of the donations. In fact, the DWF, or its predecessor, is the agency which has operated and managed Rockefeller and Marsh Island Refuges since their donations.
Through these constitutional and statutory provisions, as well as the acts of donation for the Rockefeller and Marsh Island Refuges, the Department Of Wildlife and Fisheries has control and authority over the use of wildlife management areas and wildlife refuges,[7] and has historically exercised its jurisdiction over these areas, both for activities directly related to wildlife resources, such as hunting and trapping, as well as activities which are more closely related to general land management practices, such as seismic activities and pipeline right-of-ways.
Pursuant to these constitutional and statutory provisions and the acts of donation, we believe the Department of Wildlife and Fisheries and the Wildlife and Fisheries Commission are the agencies acting as landowner of these areas and are the primary agencies responsible to ensure that the wildlife management areas and refuges are managed and operated in compliance with law and in a manner consistent with the purposes for which these areas were created. They are the land managers of these properties and, as such, are the appropriate state agencies to exercise authority over access to wildlife management areas and wildlife refuges.
It is the opinion of this office that the Department of Wildlife and Fisheries has the authority to charge a right-of-use fee allowing seismic activities on wildlife management areas and refuges.
Your second question asks whether the sixty dollar per acre right-of-use seismic fee constitutes a "fee" for purposes of Article VII, Section 2.1 of the Louisiana Constitution, requiring any new fee or increase in an existing fee be by enactment of a law by two-thirds vote of the elected members of each house of the legislature.
The question as to what is a "fee" for purposes of Louisiana Constitution Article VII, Section 2.1 has been previously addressed in Attorney General Opinion No. 96-353. That opinion concluded that "charges which are assessed by a governmental entity for the purpose of defraying the cost of providing a governmental service or the costs of regulating a particular area would be considered "fees" for the purposes of Article VII, Section 2.1. Opinion No. 96-353 further concludes that fees or charges for nongovernmental functions, products, or services would not be considered "fees" for the purposes of Article VII, Section 2.1. Our office recently addressed a nearly identical situation in Opinion No. 97-127. That opinion concerned whether right-of-way fees charged by the State Land Office were "fees" subject to the requirements of Article VII, Section 2.1 of the Louisiana Constitution. Opinion No. 97-127 concluded that the fees were not "fees" for the purposes of Article VII, Section 2.1 because they were not a charge assessed for the purpose of defraying the cost of a governmental service or regulating a particular activity under the control of government. We believe the right-of-use fee for seismic operations on wildlife management areas and refuges is essentially the same type of fee as that charged by the State Land Office. Therefore, because the right-of-use seismic fee is not a charge assessed for the purpose of defraying the cost of a governmental service or regulating a particular activity under the control of government, it is the opinion of this office that the consideration paid the State for the right to use its property for seismic activity is not a "fee" for purposes of Article VII, Section 2.1.
We trust the foregoing has been helpful. Should you have any further questions please contact our office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _________________________ FREDERICK C. WHITROCK Assistant Attorney General
RPI/FCW/tp
[1] It is unclear whether the DWF must approve the application before the Mineral Board may issue the permit or agreement or whether the Board is merely extending a courtesy to the DWF for their comments. In either event, it appears to be the practice of the Mineral Board not to issue a permit without the concurrence or over the objection of the DWF.
[2] The applicant decides whether to apply for an Exclusive Geophysical Agreement or a permit pursuant to LAC 43:V.101 et seq., subject to the discretion of the Mineral Board.
[3] The Mineral Board does not consider its Exclusive Geophysical Agreements as right-of-use permits, but rather as contracts to conduct seismic activities pursuant its authority under R.S. 30:209.1 to contract for geophysical and geological surveys.
[4] We believe an amount comparable to the price received by private property owners for a similar right-of-access is sufficient compensation for purposes of La. Const. Art. VII Sect.14.
[5] While the DWF is the agency with primary public trust responsibilities over wildlife resources, the public trust doctrine is imposed on all state agencies. See Save Ourselves,Inc. v. Louisiana Environmental Control Commission,452 So.2d 1152 (La. 1984).
[6] The Commissioner of Conservation was the predecessor to the secretary of the Department of Wildlife and Fisheries.
[7] The Governor's Office recently reached this same conclusion with respect to Pass-a-Loutre Wildlife Refuge. See the letter dated August 3, 1998, to Secretary Caldwell and Secretary Jenkins (attached hereto).