MALLON OIL COMPANY, a Colorado corporation, Plaintiff–Appellant and Cross–Appellee,

v.

BOWEN/EDWARDS ASSOCIATES, INC., a dissolved Colorado corporation, J. Keith Edwards, an individual, Michael J. Bowen, an individual, Bradford C. Boyce, an individual, Bowen Gas Corporation, a Colorado corporation, and Edwards Energy Corporation, a Colorado corporation, Defendants–Appellees and Cross–Appellants.

No. 95CA0684.

Colorado Court of Appeals, Div. V.

Nov. 29, 1996.

Rehearing Denied Jan. 16, 1997.

Certiorari Granted Aug. 4, 1997.

Holme Roberts & Owen, L.L.C., Spencer T. Denison, Martin D. Litt, Denver; Holme Roberts & Owen, L.L.C., Walter H. Sargent, Colorado Springs, for Plaintiff–Appellant and Cross–Appellee.

Fairfield and Woods, P.C., John S. Pfeiffer; Astrella & Rice, P.C., Lance Astrella, T.R. Rice, Denver, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge MARQUEZ.

Plaintiff, Mallon Oil Company, appeals the judgment in favor of defendants, Bowen/Edwards Associates, Inc., a dissolved Colorado corporation (BEA); J. Keith Edwards and Michael J. Bowen, individually; Bradford C. Boyce; and two Colorado corporations, Bowen Gas Corporation and Edward Energy Corporation. The judgment denied Mallon's claims for alleged fraudulent concealment and misappropriation of information relating to the presence of significant amounts of methane gas on land to which Mallon held mineral and development rights. Defendants cross-appeal certain findings and the award of costs. We vacate that portion of the judgment awarding costs and remand for further proceedings on that issue. In all other respects, we affirm.

In December 1987, Mallon, an oil and gas exploration company, with the participation of defendant Boyce, negotiated a Mineral Exploration and Development Agreement (MEDA) on land owned by the Southern Ute Indian Tribe (the Tribe) in La Plata County. This land is located on the periphery of the San Juan Basin, and overlies the Fruitland coal formation.

The MEDA divided the land into blocks A, B, and C and provided for Mallon to earn the mineral interests by drilling a specified number of wells on the subject acreage within certain time periods. Mallon's purpose under the MEDA was to explore for oil and gas.

The MEDA provided:

Subject to the terms and conditions of this Agreement, the Tribe hereby gives, grants and conveys to Mallon, its agents, employees, successors and assigns, during the term hereof, *the exclusive right* to explore the Subject Acreage for *Minerals* for the purposes of drilling the Test Wells and the Option Wells provided for herein, including without limitation the right to enter upon the Subject Acreage, to conduct geological and geophysical work thereon including seismic operations, to remove samples for test purposes, to drill and operate for, mine, extract, remove, save, treat, transport, market and dispose of Minerals . . . . (emphasis added)

The MEDA specifically defines minerals:

*Minerals* shall mean oil, gas, casinghead gas, other hydrocarbons (whether liquid or gaseous), carbon dioxide gas and sulfur. (emphasis in original)

Pursuant to the MEDA, Mallon had an affirmative duty to disclose all activities and information to the Tribe. However, there was no express corresponding obligation by the Tribe to share information with Mallon. The Agreement warranted that the subject land was not subject to any leases or other

agreements granting rights to explore for and produce minerals.

In March and September 1988, Mallon drilled and completed two oil wells on two of the blocks.

In May 1988, the Tribe, in conjunction with the Bureau of Indian Affairs, contracted with the United States Geological Survey (USGS) to conduct "coal and hydrocarbon research and drilling" in the Fruitland formation on the subject land. Mallon does not dispute the Tribe's authority to enter into this agreement. Nonetheless, the project with the USGS was undertaken without plaintiff's knowledge.

The USGS drilling was done openly, and many of the coring holes dug by the USGS were scattered throughout the subject acreage. USGS personnel analyzed the coal while extracting core samples from most of the test holes and performed detailed analyses of these cores. The USGS discovered significant amounts of methane gas in many of these test holes. USGS geologists recorded this information in their records.

At the time of these tests, the Tribe's principal contact person for the USGS coal drilling project was defendant Boyce, a professional geologist. Boyce requested that the USGS geologist, who directed the drilling, collect core samples from the subject land and place these samples in special sealed containers in order that "desorption tests" could be conducted to determine the gas content of the coals at those particular points. Although, while testifying, Boyce could not remember these specific tests, the trial court nevertheless found that Boyce had performed some of these desorption tests himself. Mallon was not told of, and did not consent to, Boyce's desorption testing.

The desorption tests revealed quantities of methane gas. In his letter of March 1989 to the Bureau of Indian Affairs requesting funds for additional drilling, Boyce concluded that there were potentially large volumes of methane gas in the shallow coals of the subject land.

In April 1989, Mallon requested an extension of the deadline in the MEDA requiring it to drill a third test well on the remaining block. The Tribe, based in part on Boyce's recommendation, offered Mallon an extension if Mallon would give up most of the interest it had already earned in the subject land. Mallon declined this offer and retained its mineral rights. Boyce did not disclose the results of the USGS tests or his desorption tests at this time.

In July 1989, Boyce left the Tribe's employ and went to work for defendant BEA, another oil and gas exploration and development company. Upon his departure from the Tribe, Boyce was instructed by representatives of the Tribe that he was prohibited from taking or revealing data that he acquired while an employee of the Tribe.

Evidence was presented that BEA had approached Mallon in 1988 to purchase its interests in the Fruitland coal formation, but those offers were rejected. On July 17, 1989, Boyce, on behalf of BEA, contacted Mallon to inquire whether it would be interested in selling its oil and gas rights on the subject land. On July 21, 1989, Mallon's representatives and Boyce met to discuss a potential sale.

When Mallon indicated an interest in selling, Boyce returned to the Tribe offices on August 1, 1989, and obtained copies of the geophysical logs which the USGS had prepared. The Tribe apparently made no effort to prevent Boyce from having access to this information. This information was conveyed by Boyce to his BEA principals, and was used in reaching the terms of an agreement with Mallon, and in presenting the prospect to other investors. The parties finalized the transaction on October 30, 1989, with BEA paying $302,000 for Mallon's Fruitland coal formation rights. At no time prior to the closing was Mallon advised by BEA or Boyce about the results of the USGS core drilling or of the information Boyce knew from his desorption tests.

A month later, BEA applied to drill gas production wells in many of the same locations as the USGS coring holes which showed evidence of methane gas. Six months later, BEA conveyed most of its interest to another company. BEA retained a 15 percent working interest after payout and Boyce had re-

ceived 10 percent of BEA's working interest after payout.

In 1993, Boyce disclosed to Mallon's president that Boyce and BEA had possessed core data indicating a potentially high level of methane gas in the subject area prior to BEA's purchase of Mallon's rights. In early 1994, Mallon discovered the USGS report and learned of Boyce's desorption tests from the USGS geologist. It then filed this action in March 1994 asserting claims for fraudulent concealment of the results of Boyce's desorption tests, misappropriation of geological data, and civil conspiracy, and sought to impose a constructive trust.

Defendants unsuccessfully filed numerous motions for summary judgment or dismissal. In ruling on pre-trial motions, the initial trial judge determined that under the MEDA Mallon had the exclusive right to conduct tests for minerals. The initial judge then recused himself and the case was transferred to another judge.

After five days of testimony in a trial to the court, the trial court ruled for defendants on all claims. The court noted that it did not accept Mallon's misappropriation claim because it found that defendants did not act illegally. The court also found no duty owed to plaintiff by defendant to disclose this information.

Because the defendants had made a settlement offer prior to trial, and Mallon recovered less than the amount of the settlement offer, defendants together requested $21,-091.09 in costs pursuant to § 13–17–202, C.R.S. (1996 Cum.Supp.). However, the court awarded defendants only $4,145.38 in costs. Defendants' motion for reconsideration was denied.

## I.

Mallon first contends that defendants had a duty to disclose their findings of gas in the subject land from their geophysical tests. Under the circumstances here, we disagree.

■ To establish a claim for fraudulent concealment or non-disclosure, the plaintiff must show that the defendant had a duty to disclose the information. *Berger v. Security Pacific Information Systems, Inc.,* 795 P.2d

1380 (Colo.App.1990). Whether the defendants had a duty to disclose information is a question of law. *Van Winkle v. Transamerica Title Insurance Co.,* 697 P.2d 784 (Colo.App.1984).

■ A person has a duty to disclose to another with whom he deals facts that "in equity or good conscience" should be disclosed. *Berger v. Security Pacific Information Systems, supra.*

■ In a business transaction:

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, *if, but only if, he is under a duty to the other* to exercise reasonable care to disclose the matter in question.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of facts from being misleading; and

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551 (1977) (emphasis added). *See Bair v. Public Service Employees Credit Union,* 709 P.2d 961 (Colo.App.1985).

More specifically, a party has a duty to disclose if he or she has stated facts that the party knows will create a false impression unless other facts are disclosed. *Berger v. Security Pacific Information Systems, supra.*

Here, Mallon and defendants were not fiduciaries or in a relationship of trust. Both BEA and Mallon were oil and gas exploration companies, and as competitors their negotiations were at arms length. No evidence of a relationship of trust and confidence between the parties was presented which would give rise to a duty to disclose.

Nor is this a case in which the nondisclosure created a half-truth. Defendants did not make any statements to Mallon which, combined with their failure to disclose their findings to Mallon, would make any such statement misleading.

Likewise, the information defendants acquired would not make untrue a previous representation, since there were no previous representations between the two regarding the amount of gas in the subject land.

There also was no evidence of an initial misrepresentation which later was going to be relied upon by Mallon. In fact, this dispute involves a nondisclosure, not an affirmative mispresentation.

Asserting that the facts of this case create a situation in which it would reasonably have expected disclosure of information of this sort, Mallon argues that Restatement (Second) of Torts § 551(2)(e)(1977) clearly establishes liability. Mallon stresses the facts that Boyce had worked for the Tribe when it negotiated the MEDA and that he personally "trespassed" upon Mallon's exclusive right of exploration and conducted his desorption tests. Thus, Mallon contends that, as a matter of law, defendant Boyce was a geophysical trespasser, and because he was a trespasser, he obtained the information illegally and had a duty to disclose it. We reject these arguments.

First, as noted above, there was no special relationship between Mallon and defendants.

Second, a geophysical trespasser is "one who conducts geophysical operations upon the lands of another without permission or consent. Such an explorer may also be deemed a trespasser where the consent or permission obtained is for any reason ineffectual, or where the operations conducted are in excess of the consent or permission granted." *Grynberg v. City of Northglenn,* 739 P.2d 230, 237 (Colo.1987) (quoting Brown, *Geophysical Trespass,* 3 Rocky Mtn. Min. L. Inst. 57 at 62–63 (1957)). A geophysical trespass is "the wrongful entry on land for the purpose of making a geophysical survey on the land." Note, *Oil & Gas: Improper Geophysical Exploration,* 32 Okla. L.Rev. 903 (1979) (fn.3) (quoting H. Williams & C. Meyers, *Manual of Oil & Gas Terms* 255 (4th ed.1976)).

The general common law rule is that a person rightfully on property does not have a duty to disclose knowledge of the land to a seller of the land who does not have the same knowledge. *See People v. Tynon,* 2 Colo. App. 131, 29 P. 809, (1892); *see also* Summers, *Law of Oil & Gas* § 662 (1962); Restatement (Second) of Contracts § 161, illustration 10 (1981).

For example, if a prospective lessee, by acts which are authorized, discovers the existence of an oil and gas structure on the lessor's land, he has violated no legal duty owing to the lessor. As long as the parties deal at arms length, a mineral lessee has no duty to disclose information gained by geophysical tests. Summers, *Law of Oil & Gas* § 662 (1962); *see Stackpole v. Hancock,* 40 Fla. 362, 24 So. 914 (1898) (By the common law rule, "a vendee who has information of a mine on the land of another of which the latter is ignorant, is under no legal obligation to disclose such fact in making the purchase."); *see also Harris v. Tyson,* 24 Pa. 347, 64 Am. Dec. 661 (1855).

An exception to the general rule of no duty exists when the buyer learns of the information through improper means, such as trespass. *See* Restatement (Second) of Contracts § 161, illustration 11 (1981).

Here, because Boyce was rightfully on the land looking for coal, he was not a geophysical trespasser, and consequently, defendants had no duty to disclose their discovery of gas.

As noted above, the MEDA, which was drafted by Mallon and its attorneys, specifically provided that Mallon had an affirmative duty to disclose oil and gas information to the Tribe. However, there was no express corresponding obligation requiring the Tribe to share information with Mallon.

Mallon nevertheless argues that, since it possessed the exclusive rights to conduct gas exploration and testing on the subject parcel, only it could effectively consent to any such testing by defendant Boyce or anyone else. Defendants contend that Mallon essentially had a *qualified* exclusive right to explore for gas. They assert that the "exclusive right" language of the MEDA gave an exclusive right only for the limited purpose of drilling certain initial oil and gas wells, and only then would Mallon earn the right to explore for minerals. For this reason, in defendants' view, the MEDA did not grant Mallon the exclusive right to the information gathered by the USGS, and the trial court erred in finding that Mallon had an exclusive right. We conclude that, even if we assume plaintiff had an exclusive right to conduct gas exploration and testing, defendants nevertheless had no duty to disclose.

■■■ The meaning of contractual provisions is a question of law, *Pepcol Manufacturing Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo.1984), and an appellate court is not bound by the prior ruling of a trial court. *U.S. Fidelity & Guaranty Co. v. Budget Rent-A-Car Systems, Inc.*, 842 P.2d 208 (Colo.1992). However, we agree with the trial court's determination that the plain language of the contract provides for an exclusive right for exploration of minerals, not including coal.

The MEDA allowed Mallon to use the subject land in a variety of ways for the purpose of exploring for minerals, including methane gas. However, the MEDA does not include coal in the definition of minerals.

When defendant Boyce and the USGS explored the subject property, they were exploring for coal. Also, Mallon concedes that the Tribe had the right to retain the USGS to test for coal. Hence, since Boyce and the Tribe were searching for coal rightfully, and the methane gas information was coincidentally obtained, they did not violate Mallon's exclusive right to the other minerals. *See* Summers, *Law of Oil & Gas*, § 662 (1962).

## II.

Mallon also claims that the trial court erred by denying recovery for defendants' alleged misappropriation of geological information and data. We disagree.

Citing *Grynberg v. City of Northglenn*, 739 P.2d 230 (Colo.1987), plaintiff insists that Colorado recognize a tort of "wrongful appropriation of geologic information." *Grynberg* recognizes a tort of "geophysical trespass," and suggests that an alternate title for the tort could be "wrongful appropriation of the right to explore." *Grynberg, supra*, 739 P.2d at 236–237. However, *Grynberg* does not specifically recognize a claim for "wrongful appropriation of geologic information."

The *Grynberg* court does cite *Layne Louisiana Co. v. Superior Oil Co.*, 209 La. 1014, 26 So.2d 20, 22 (1946) for the proposition that: "[W]here ... [information from geophysical tests], which is exclusively [the landowner's] by virtue of his ownership of the land is unlawfully obtained by others, the landowner is clearly entitled to recover ... damages for the disregard of his property rights." Nevertheless, even if we assume this suggests a claim for relief for wrongful appropriation of geologic information, since the information in this case was not wrongfully obtained, no claim for relief would stand.

■■■ The right to conduct geologic testing for minerals can be derived only from or through the owner of the mineral estate. *Grynberg v. City of Northglenn, supra.* An unauthorized invasion of the lands renders the invader a trespasser who could be liable for damages resulting to the owner of the property right. The right to explore includes a right to information relative to that exploration; this information is also a property right belonging to the one who holds an

interest in mineral development. *Ohio Oil Co. v. Sharp*, 135 F.2d 303 (10th Cir.1943).

■ However, not all information necessarily receives protection. To determine which information is entitled to protection, courts often look to the method of its acquisition. *See Ohio Oil v. Sharp, supra; Phillips Petroleum Co. v. Cowden*, 241 F.2d 586 (5th Cir.1957).

At least one legal commentator suggests that misappropriation of a property owner's right to explore should be likened to the law of misappropriation of trade secrets. Note, *Oil and Gas: Improper Geophysical Exploration*, 32 Okla. L.Rev. 903 (1979).

Under a trade secret analysis, courts consider whether the plaintiff has a legally protectable interest in the information or process, and whether the defendant used improper means in acquiring it. If a trade secret is acquired honestly, the holder has no cause of action. R. Ellis, *Trade Secrets* § 14 (1953).

■ Mallon clearly had a right of exploration. However, because we conclude defendant did not use improper means in acquiring the information concerning methane gas, there can be no liability against defendants for misappropriation.

We have concluded that Boyce was not a geophysical trespasser regarding the methane gas information. As discussed above, the MEDA did not preclude Boyce's presence on the land. Thus, the discovery of gas information was incidental to the coal exploration which the Tribe was clearly allowed to conduct.

Therefore, under a misappropriation analysis, defendants cannot be liable since they did not obtain the information wrongfully.

### III.

On cross-appeal, defendants, asserting a violation of § 13–17–202, C.R.S. (1996 Cum. Supp.), contend that the trial court erred in failing to award all costs they incurred after Mallon rejected the offer of settlement. We conclude that further findings are required.

If the defendant serves an offer of settlement at any time more than ten days before the commencement of the trial that is rejected by the plaintiff and the plaintiff does not recover a final judgment in excess of the amount offered, then the defendant shall be awarded *actual costs* accruing after the offer of settlement to be paid by the plaintiff.

Section 13–17–202(1)(a)(II), C.R.S. (1996 Cum. Supp). The statute specifies that "actual costs" does not include attorney fees. Section 13–17–202(1)(b), C.R.S. (1996 Cum. Supp.).

■ On October 7, 1994, defendants served an offer of judgment on Mallon, which Mallon declined. Subsequently, inasmuch as plaintiff did not recover a final judgment in excess of the amount offered, defendant BEA, with supporting receipts, sought costs of $14,261.80 against Mallon pursuant to this statute. Boyce submitted a similar request for costs for $6,829.29, but attached receipts for only $5089.96 of his claimed expenses. He now asks this court to grant him attorney fees since he was forced to travel to defend the lawsuit against him.

The trial court, in its February 2, 1995, order, awarded defendants $4,145.38 without delineating specifically to whom this money was awarded and without stating its reasons for a reduced award. The order provided only that:

Costs are awarded as follows:

| | |
|---|---|
| Filing fee | $ 79.00 |
| Service Charges | 766.38 |
| Deposition reasonably needed for trial | 1,500.00 |
| Reasonable expert fee | 2,500.00 |
| Total | $4,145.38 [sic] |

■ To award costs under the statute: 1) the costs must have accrued after the settlement offer, § 13–17–202(1)(a)(II), C.R.S. (1996 Cum.Supp.); 2) they must be actual costs, excluding attorney fees, § 13–17–202(1)(b), C.R.S. (1996 Cum.Supp.); and 3) the costs must be reasonable. *See Scholz v. Metropolitan Pathologists, P.C.*, 851 P.2d 901 (Colo.1993); *Jorgensen v. Heinz*, 847 P.2d 181 (Colo.App.1992).

Because we are unable to determine either the party to whom the costs have been allocated or the reasons the court awarded only partial costs, we conclude the cause must be

remanded for more specific findings on this issue.

Because "actual costs" do not include attorney fees, § 13–17–202(1)(b), C.R.S. (1996 Cum.Supp.), defendant Boyce's claim for attorney fees is denied.

Accordingly, that portion of the judgment awarding actual costs is vacated and the cause is remanded for further findings consistent with the views set forth in this opinion. In all other respects, the judgment is affirmed.

RULAND and TAUBMAN, JJ., concur.