MALLON OIL COMPANY, Petitioner,

v.

BOWEN/EDWARDS ASSOCIATES, INC., a dissolved Colorado corporation; J. Keith Edwards; Michael J. Bowen; Bradford C. Boyce; Bowen Gas Corporation, a Colorado corporation; and Edwards Energy Corporation, a Colorado corporation, Respondents.

No. 97SC150.

Supreme Court of Colorado, En Banc.

Sept. 14, 1998.

Holme Roberts & Owen, LLP, Spencer T. Denison, Martin D. Litt, Denver, Walter H. Sargent, a Professional Corporation, Walter H. Sargent, Colorado Springs, for Petitioner.

Astrella & Rice, P.C., Lance Astrella, T.R. Rice, Denver, for Bowen/Edwards Associates, Inc.; J. Keith Edwards; Michael J. Bowen; Bowen Gas Corporation; and Edwards Energy Corporation.

John F. Head, P.C., John S. Pfeiffer, Denver, for Bradford C. Boyce.

Justice BENDER delivered the Opinion of the Court.

This case requires us to determine whether an employee of the Southern Ute Indian Tribe committed geophysical trespass when he conducted coal bed methane gas tests on the Tribe's property during the term of an oil and gas lease between the Tribe and Mallon Oil Company. We hold that unlawful geophysical trespass did not occur. We also hold that when the employee went to work for a competitor of Mallon, the employee and the competitor had no duty to Mallon to disclose geophysical information the employee learned while working for the Tribe.

The Tribe granted Mallon a lease, including the exclusive right to explore for oil and gas reserves on the Tribe's property. The Tribe retained the right to explore for coal. During the term of the lease, Bradford Boyce, a geologist working for the Tribe, conducted tests and discovered that the land potentially contained a high volume of coal bed methane gas. Later, Boyce left his position with the Tribe and secured a new job with Bowen/Edwards Associates, Inc. (BEA), an oil and gas company that was in competition with Mallon. Boyce informed BEA that he believed that the Tribe's land contained substantial coal bed methane gas reserves. BEA purchased Mallon's rights from Mallon without disclosing its knowledge of the land's coal bed methane gas reserves. Mallon then instituted this action against BEA and Boyce for unauthorized geophysical trespass, fraudulent concealment, and civil conspiracy.

The court of appeals held that Boyce did not commit the tort of unauthorized geophysical trespass because he did not acquire the information regarding the potential gas reserves through "improper means." *Mallon Oil Co. v. Bowen/Edwards Assocs.*, 940 P.2d 1055, 1062 (Colo.App.1996). The court of appeals further held that neither Boyce nor BEA had a duty to Mallon under *Restatement (Second) of Torts* § 551(2)(e) (1977) to disclose their knowledge of the land's potential gas reserves. *See id.* at 1061.

We agree. The district court determined that the Tribe retained the right to explore for coal, and found that the coal bed methane gas discovery was incidental to that exploration. Giving deference to the district court's findings of fact, we hold that Boyce did not commit geophysical trespass when he conducted the desorption tests. The Tribe had the right to explore for coal but did not trespass on Mallon's right to explore for oil and gas when it incidentally acquired coal bed methane gas information by virtue of its

coal exploration. We also hold that neither Boyce nor BEA had a duty to disclose the results of the tests to Mallon.

## I. FACTS

In December of 1987, Mallon Oil Company entered into a Mineral Exploration and Development Agreement (the MEDA) with the Southern Ute Indian Tribe. The MEDA granted Mallon the exclusive right to explore for oil and gas—including hydrocarbons—on approximately 5000 acres of the Tribe's land located in La Plata County.[1] This acreage included portions of the Fruitland coal formation, one of the many oil and gas producing geologic formations in the San Juan Basin. In previous years, studies conducted on the Fruitland coal formation in this vicinity revealed that the land contained potentially high volumes of coal bed methane gas—a hydrocarbon and a gaseous byproduct of coal. Respondent Boyce, a geologist and the Tribe's Manager of Exploration and Production, participated in the negotiation and drafting of the MEDA on behalf of the Tribe.

The MEDA required Mallon to disclose oil and gas information to the Tribe, but it contained no corresponding obligation by the Tribe to share information with Mallon. All of the parties agree that the Tribe retained the right to explore for coal. In May and September of 1988, in accordance with the MEDA, Mallon drilled two wells in the Fruitland coal formation but found no indication of significant gas deposits.

During this time, the Tribe was engaged in a broad program designed to assess its mineral resources including oil, gas, and coal reserves. In furtherance of this assessment program, the Tribe entered into numerous mineral assessment contracts with various entities. The Tribe entered into one such contract with the United States Geological Survey (U.S.G.S.) for the U.S.G.S. to conduct a coal assessment evaluation of the Fruitland coal formation, including the section of the Fruitland formation running through the Mallon lands. The purpose of the U.S.G.S. evaluation was to test for coal mineability by conducting "coal and hydrocarbon research and drilling" on the Tribe's lands, including the acreage subject to the MEDA. The Tribe entered into the U.S.G.S. agreement approximately six months after the Tribe entered into the MEDA. Boyce again acted as the Tribe's representative in setting the terms of the agreement.

Pursuant to its agreement with the Tribe, the U.S.G.S. drilled test holes in 1988 along the Fruitland coal formation; approximately one-half were located on the land subject to the MEDA. For each test hole, the U.S.G.S. noted the depth and thickness of the coal beds located below the surface and recorded this data in geophysical logs. During the drilling process, the U.S.G.S. encountered evidence of significant amounts of coal bed methane gas in many of the test holes. For example, many of the core samples that the U.S.G.S. extracted from the test holes emitted gas bubbles. In addition, the U.S.G.S. observed gas kicks and water discharge, which indicate the existence of a significant volume of gas.

Although the results of this program would eventually become public information as required by 43 U.S.C. § 31 (1994), at the Tribe's request the U.S.G.S. agreed to delay publication of the test results until after the Tribe had exclusive access to the information for a period of time.

As the drilling progressed, the U.S.G.S. apprised Boyce of all of its findings, including the gas bubbles, gas kicks, and water discharge that suggested the presence of a large volume of gas. It was not the first time Boyce had encountered evidence of gas in this vicinity. The previous year, Boyce conducted tests on the Tribe's lands approximately eight miles from the Mallon lands and discovered high volumes of coal bed methane gas in the shallow areas of the Fruitland coal formation.

1. Both Boyce and BEA argue that the MEDA's exclusivity clause applies only to third parties and that Mallon and the Tribe possessed coextensive rights to explore for oil and gas. Since the exclusivity clause does not affect our holding, we do not resolve this dispute. The district court found, and we presume for purposes of this opinion, that the MEDA prohibited the Tribe from exploring for oil or gas.

Boyce instructed the U.S.G.S. staff to procure core samples of the coal and to deliver these samples to him. He received four samples: two from the lands subject to the MEDA and two from lands adjacent to the Mallon property. He conducted rudimentary desorption tests[2] on the samples to determine whether the coals contained a sufficient amount of gas to make the land commercially productive for gas development. The tests revealed that some of the samples contained a large volume of coal bed methane gas. However, it is unknown whether the samples taken from the Mallon lands were the ones that contained substantial volumes of gas. Boyce took no notes of the tests. At trial he did not recall the test results.

Based on the U.S.G.S. findings and the results of the desorption tests, Boyce concluded that the Fruitland coal formation contained "potentially large volumes" of coal bed methane gas. Boyce informed the Tribe of this conclusion. The Tribe did not share this information with Mallon.

Boyce terminated his employment with the Tribe on July 1, 1989, and accepted a position with respondent BEA. Boyce persuaded BEA that it should attempt to acquire Mallon's rights to portions of the Fruitland coal formation, and he contacted Mallon on behalf of BEA to inquire whether Mallon was interested in selling its rights. In September of 1989, the U.S.G.S. published the results of its assessment of coal mineability. On October 30, 1989, BEA purchased Mallon's rights under the MEDA.

After Mallon expressed an interest in the sale but before the sale occurred, Boyce engaged in further investigation of the land leased by Mallon to determine whether it contained commercially retrievable volumes of coal bed methane gas. Boyce entered the Mallon lands and examined monitoring wells for signs of gas. He returned to the offices of the Tribe and obtained copies of the geophysical logs generated by the U.S.G.S. Although the logs were unpublished at this time, the Tribe provided the information to Boyce upon his request and made no effort to prevent his access to the logs. Using the logs, Boyce created an isopach map[3] that displayed the thickness and depth of the coal on the MEDA lands. Boyce and BEA used this map and the U.S.G.S. logs to evaluate the commercial potential of the land for the extraction of coal bed methane gas and to solicit investors for the funds necessary to purchase Mallon's interest.[4] In evaluating the land's potential for coal bed methane gas, BEA did not rely on the results of the desorption tests since Boyce did not disclose the test results to BEA.

Before the sale occurred, neither Boyce nor BEA told Mallon about Boyce's desorption tests or the geophysical information learned by the U.S.G.S. about the Fruitland coal formation.

More than a year after the sale to BEA, Mallon learned of the U.S.G.S. report and Boyce's desorption testing and realized that Boyce and BEA possessed information before the sale indicating the existence of significant methane gas reserves on the MEDA acreage. Mallon sued Boyce and BEA for rescission and the imposition of a constructive trust, asserting claims for unauthorized geophysical trespass, fraudulent concealment, and civil conspiracy.

At trial, Mallon alleged that Boyce committed the tort of unauthorized geophysical trespass by conducting the desorption tests when Mallon possessed the exclusive right to explore for gas on the MEDA property. With respect to the fraudulent concealment claim, Mallon argued that Boyce and BEA had a duty to Mallon under *Restatement (Second) of Torts* § 551(2)(e) to disclose their knowledge regarding the U.S.G.S. study and the desorption tests before purchasing Mallon's rights to the land.

2. Boyce attached one end of a hose to a canister containing coal and the other end of the hose to an inverted beaker containing water. The coal released gas, which traveled through the hose and displaced the water. The amount of displaced water indicated the gas content of the coal.

3. An isopach map demonstrates the depth and thickness of a particular mineral.

4. Boyce testified at trial that thick beds of coal are more likely to contain greater quantities of coal bed methane gas.

The district court rejected Mallon's arguments and entered judgment in favor of Boyce and BEA on all claims. The district court determined that the MEDA granted Mallon an exclusive right to explore for oil and gas and that the Tribe reserved the right to explore for coal. The district court found that Boyce's discovery of gas on the property was incidental to his exploration of coal on behalf of the Tribe. The district court reasoned that Boyce did not commit the tort of unauthorized geophysical trespass because he did not acquire the information regarding the potentially high volumes of coal bed methane gas contained in the Fruitland coal formation through improper means:

> [P]laintiff's misappropriation claim under these circumstances must fail because the defendants didn't act illegally. They did not trespass, nor did they convert known secret confidential information or acquire it in any other illegal manner.

Turning to the fraudulent concealment claim, the district court reviewed the elements of *Restatement (Second) of Torts* § 551(2), which sets forth the circumstances in which one party to a business transaction has a duty to disclose material information regarding the transaction to the other party. The district court stated that section 551(2) required the plaintiff to demonstrate that the defendant made misleading statements, or that the defendant acquired the information through trespass or other illegal means, or that other objective circumstances—such as a fiduciary relationship between the parties—required "complete candor." The district court held that Mallon's claim failed because none of these circumstances existed under the facts of this case. The district court stated that no authority supported Mallon's position, which imposed a duty to disclose upon third parties who inadvertently acquired information, or in the alternative, required parties to a contract to disclose all

of the reasons why they perceive the contract as beneficial:

> Now, none of these circumstances are here present. We are not involved with misleading statements....
>
> ... Of course, there is no illegality in acquiring this information. There was no trespass as to Mallon. There is no theft as to Mallon. I think for the plaintiff to prevail in this case the law would have to recognize some sort of ... right to exclusive use of all information gathered by anyone relative to an oil and gas lease, even if the information is innocently acquired by a third party. I don't think any of these authorities recognize any such obligation.
>
> Alternatively ... the plaintiff would have to ... establish that in the marketplace a potential contracting party has a good faith duty to disclose to the other all information that that party believes makes the contract a good business deal in its best interest. I find no authority for that proposition.

Accordingly, the district court held that neither Boyce nor BEA had a duty to Mallon to disclose their knowledge of the land's potential gas reserves.

Mallon appealed this decision, and the court of appeals affirmed. *See Mallon,* 940 P.2d at 1061, 1062. The court of appeals agreed with the district court that Boyce's discovery of gas on the property was "incidental to the coal exploration which the Tribe was clearly allowed to conduct." *Id.* at 1062. The court of appeals concluded that the "coincidental[ ]" acquisition of this information neither violated Mallon's exclusive rights under the MEDA nor imposed a duty upon Boyce and BEA under the *Restatement* to disclose this information to Mallon. *Id.* at 1061; *see id.* at 1062. Mallon then petitioned this court for certiorari.[5]

---

5. The issues presented on certiorari are as follows:

  1. Whether the court of appeals, in contravention of this court's opinion in *Grynberg v. City of Northglenn,* 739 P.2d 230 (Colo.1987), erroneously held that the tort of unauthorized geologic exploration, geophysical trespass, or wrongful appropriation of geologic informa-

tion requires, as a necessary element, that the respondents acquired their geologic information through "improper means" not shown here.

  2. Whether the court of appeals erroneously concluded that the respondents had no duty to disclose, under the principles set forth in *Restatement (Second) of Torts* § 551(2)(e), the in-

## II. UNAUTHORIZED GEOPHYSICAL TRESPASS

■ The first question we address is whether the court of appeals correctly concluded that a geophysical trespass did not occur in this case. We agree with the holding of the court of appeals that under the facts of this case, neither Boyce nor the Tribe were required to obtain Mallon's consent to explore for coal. The geophysical information obtained about coal bed methane gas was obtained incidentally as a result of the Tribe's right to explore for coal.

■ We first recognized the tort of unlawful geophysical trespass in *Grynberg v. City of Northglenn,* 739 P.2d 230, 237 (Colo. 1987). In *Grynberg,* we stated that information acquired from geophysical exploration is highly valuable. *See id.* The unlawful invasion of the right to explore for minerals gives rise to a cause of action for the tort of unauthorized geophysical trespass. *See id.* at 236 n. 6. The owner of the property right may recover compensatory damages when geophysical information "is unlawfully obtained by others." *Id.* at 237 (quoting *Layne La. Co. v. Superior Oil Co.,* 209 La. 1014, 26 So.2d 20, 22 (1946)).

■ To succeed on a claim for unlawful geophysical trespass, the plaintiff must show that the geophysical trespasser acted without valid consent or in excess of consent:

> A geophysical trespasser, of course, is one who conducts geophysical operations upon the lands of another without permission or consent. Such an explorer may also be deemed a trespasser where the consent or permission obtained is for any reason ineffectual, or where the operations conducted are in excess of the consent or permission granted.

Walace Hawkins, *The Geophysical Trespasser and Negligent Geophysical Explorer,* 29 Tex. L.Rev. 310, 314 (1951), *quoted in Grynberg,* 739 P.2d at 237. The critical issue in this case, then, is whether Boyce, by conducting desorption tests, acquired any information concerning the Mallon lands without or in excess of valid consent.

The district court resolved this issue by concluding that Boyce was not required to secure Mallon's consent since Boyce was exploring for coal rather than gas when Boyce "coincidentally obtained" information relating to coal bed methane gas. The court of appeals affirmed on this basis.

At trial, Boyce testified that he conducted desorption tests to determine the volume of coal bed methane gas in the Fruitland coal formation. Testimony of experts presented by both sides, including Boyce, revealed that the feasibility of mining coal depends on the volume of coal bed methane gas contained within the coals. The commercial potential of coal depends on the commercial potential of the coal bed methane gas. Coal bed methane gas measurements indicate the type and quality of coal that the developer can expect in the formation. It is uneconomical to extract coal without first ascertaining whether the coal bed methane gas contained within the coal will generate greater profits. *See generally Southern Ute Indian Tribe v. Amoco Prod. Co.,* 151 F.3d 1251, 1264–66 (10th Cir.1998) (discussing the geophysical relationship between coal and coal bed methane).

■ None of the parties disputes the district court's finding of fact that Boyce's desorption tests were "incidental" to the Tribe's right to explore for coal. The trial record provides ample support for this determination. We are bound to defer to the district court's fact-finding and will not disturb it on appeal unless the findings are clearly erroneous. *See* C.R.C.P. 52; *Trevino v. HHL Fin. Servs., Inc.,* 945 P.2d 1345, 1346 n. 1 (Colo. 1997) (declining to address an issue not raised on appeal).

Applying the legal principles discussed to the facts of this case, we give deference to the district court's finding of fact that the desorption tests were incidental to the Tribe's right to explore for coal, and we hold that no geophysical trespass occurred when Boyce conducted the desorption tests.

■ Mallon argues nevertheless that the court of appeals applied a standard of law inconsistent with the one we articulated in

formation about gas reserves that was obtained

without petitioner's consent.

*Grynberg.* Mallon contends that the court of appeals erroneously required a showing that Boyce and BEA acquired their geologic information through "improper means," a phrase that Mallon equates with bad faith or knowledge of the wrongfulness of conducting the desorption tests.

We disagree with Mallon's contention. Conducting geophysical exploration without or in excess of consent is "improper." Thus, we reject Mallon's argument that a plaintiff can succeed on a claim for unlawful geophysical trespass without demonstrating that the defendant engaged in improper conduct. While we agree that bad faith is not an element of this tort, review of the court of appeals' opinion reveals that the court did not require a showing of bad faith or knowledge of the trespass. Instead, the court of appeals adhered to the standard that we articulated in *Grynberg:* unlawful geophysical trespass occurs when an explorer fails to obtain valid consent or exceeds the scope of consent. Because this standard is identical to that articulated in *Grynberg,* we reject Mallon's contention that the court of appeals applied the incorrect standard of law.

### III. DUTY TO DISCLOSE

■ We now turn to Mallon's claim for fraudulent concealment and decide whether Boyce and BEA had a duty under *Restatement (Second) of Torts* § 551(2) to disclose their knowledge of potential gas reserves to Mallon prior to the sale. We conclude that neither Boyce nor BEA had a duty to disclose geophysical information to Mallon since none of the circumstances set forth in *Restatement (Second) of Torts* § 551(2) exist under the facts of this case.

■ To succeed on a claim for fraudulent concealment or non-disclosure, a plaintiff must show that the defendant had a duty to disclose material information. *See Smith v. Boyett,* 908 P.2d 508, 512 (Colo.1995). A defendant has a duty to disclose to a plaintiff with whom he or she deals material facts that "in equity or good conscience" should be disclosed. *Id.*

To determine whether the circumstances of a particular case give rise to a duty to disclose in "equity or good conscience," the *Restatement (Second) of Torts* § 551(2) provides helpful guidance. Section 551(2) sets forth situations in which such a duty exists. As pertinent to this case, section 551(2)(e) provides that one party to a business transaction has a duty to disclose facts basic to the transaction when objective circumstances create a reasonable expectation of disclosure of those facts:

> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
> . . .
>
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade *or other objective circumstances, would reasonably expect a disclosure of those facts.*

(Emphasis added.)

Based on this language, Mallon argues that the "objective circumstances" of this case imposed a duty upon Boyce and BEA to disclose their knowledge of the potential gas reserves. Mallon argues that the "circumstances" giving rise to a duty to disclose include: (1) Boyce's alleged trespass by means of the desorption tests; (2) Boyce's acquisition and disclosure of the U.S.G.S. information to BEA before its publication; (3) Boyce's acts of negotiating the MEDA, managing the U.S.G.S. project, and initiating BEA's acquisition of Mallon's rights; and (4) BEA's act of paying Boyce a salary and a percentage of the interest acquired for the information that he obtained, allegedly, in violation of Mallon's exclusive rights. We are not persuaded that any of these circumstances requires disclosure.

■ First, Mallon argues that trespass creates a duty to disclose information, and that Boyce had a duty to disclose because he committed a geophysical trespass when he conducted the desorption tests. At common law, the general rule is that a person rightfully on property does not have a duty to disclose knowledge of the land to a seller of the land who does not have the same knowl-

edge. *See* W.L. Summers, *The Law of Oil & Gas* § 662 (1962). However, this rule does not apply when the buyer acquires the information through improper means, such as trespass. *See Restatement (Second) of Contracts* § 161, illus. 11 (1981). Mallon asserts that a geophysical trespass occurred and that a duty exists in this case. However, as discussed in section II, no unlawful geophysical trespass occurred in this case. Thus, Boyce's desorption tests do not constitute "objective circumstances" that would create a duty on behalf of Boyce or BEA.

Second, we address Boyce's acquisition of the U.S.G.S. data and his communication of this data to BEA before its publication. At the time Boyce acquired this information it was not yet public and belonged to the Tribe. The Tribe provided this information to Boyce upon his request and made no attempt to prevent his access to this data. The U.S.G.S. published this data to the public a month before Mallon sold its interest in the MEDA lands. Thus, the U.S.G.S. data was public information available to Mallon before the sale. Considering the Tribe's willingness to provide this data to Boyce and the accessibility of this data to Mallon, we conclude that Boyce's acquisition of this information does not constitute circumstances creating a duty to disclose.

Finally, Boyce's relationship with the Tribe, the U.S.G.S., and BEA do not change the character of Mallon's sale to BEA as an arm's length transaction. The general rule is that "[w]hen parties are dealing as vendor and vendee they deal at arms length." *Williams v. Wagers,* 117 Colo. 141, 149, 184 P.2d 497, 500 (1947). Here, BEA and its employee Boyce were in competition with Mallon. Although Boyce played integral roles in negotiating the MEDA, managing the U.S.G.S. project, and encouraging BEA's acquisition of Mallon's rights, none of these activities created a special relationship between Boyce and Mallon that would impose upon Boyce a duty to disclose information to a competitor, Mallon. Similarly, BEA's acts of hiring Boyce and acquiring information that ultimately became public did not alter the competitive nature of the relationship between BEA and Mallon.

Having rejected Mallon's arguments to the contrary, we conclude that no "objective circumstances" existed under *Restatement (Second) of Torts* § 551(2)(e) that would require Boyce and BEA to disclose their knowledge that the MEDA lands potentially contained a large volume of gas.

## IV. CONCLUSION

We hold that the desorption tests conducted by Boyce do not constitute unlawful geophysical trespass. Boyce, as the Tribe's employee, had a right to explore for coal on behalf of the Tribe. The desorption tests conducted by Boyce were incidental to the right to explore for coal. The court of appeals applied the correct standard of law when it required a showing of improper conduct as an element of the tort of unlawful geophysical trespass. We also hold that Boyce and BEA had no duty to disclose geophysical information to Mallon. Accordingly, we affirm the judgment of the court of appeals.

SCOTT, J., specially concurs.

Justice SCOTT specially concurring:

I agree with the majority that "a geophysical trespass did not occur in this case." Maj. op. at 111. I also agree "that neither [Bradford C. (Boyce)] nor [Bowen/Edwards Associates (BEA)] had a duty to disclose geophysical information to Mallon ...." *Id.* at 110. Nonetheless, though I reach the same result as the majority, I would affirm the court of appeals judgment due to slightly different analyses, and hence, I write separately.

Unfortunately for the fate of Mallon Oil Company's arguments before us, well-reasoned precedent confirms that, at least in the arena of commercial and business transactions, the law and its sanctions are not coterminous with society's highest moral or ethical standards. Experience in the marketplace teaches that for every moral wrong, in fact, there may not be a remedy.

### I.

In *Grynberg v. City of Northglenn,* 739 P.2d 230, 236 (Colo.1987), we described

" 'geophysical trespass' as a rubric for [unauthorized] invasion of the right to explore for minerals." Justice Lohr, writing for a unanimous court in *Grynberg*, described a geophysical trespasser as "one who conducts geophysical operations upon the lands of another without permission or consent." *Id.* (citing Earl A. Brown, Jr., *Geophysical Trespass*, 3 Rocky Mtn. Min. L. Inst. 57, 59 (1957)).

Here, Mallon Oil Company (Mallon) conceded that Boyce's employer, the Southern Ute Indian Tribe (Tribe), had the right to enter upon and to be on the property in question. The Tribe's activities were conducted for purposes of "coal and hydrocarbon research and drilling" on land that it owned. The research and drilling activities were carried out by the United States Geological Survey (USGS) pursuant to a contract that Mallon agreed was authorized. Based on the testimony of experts for both sides, the courts below concluded that testing for coal bed methane gas was necessary to determine the potential value of, and feasibility of mining, coal deposits. In the face of this evidence and concession, Mallon was unable to prove either that Boyce invaded its right to explore for oil and gas or that Boyce did so without Mallon's consent. Put another way, Mallon conceded that the principal, Boyce's employer, had a right to explore the property for coal, and therefore cannot be liable for trespass.[1] A concomitant conclusion is, then, that if the principal—Boyce's employer—is not liable, its agent—Boyce—acting in accordance with the Tribe's authority and within the scope of his employment, is similarly without liability. *See Restatement (Second) of Agency* § 359B cmt. a (explaining that agent's liability for principal's conduct is normally terminated by a judgment in favor of the principal); *see also Restatement (Second) of Agency* § 217A cmt. b (explaining that a prior judgment for agent normally terminates principal's liability).

This result is consistent with our opinion in *Grynberg* that where, as here, the surface and mineral estates are severed and separately owned, the owner of the mineral estate can assert "a cognizable legal claim based upon the [other] party's exploration for minerals *without the mineral estate owner's consent.*" *Grynberg*, 739 P.2d at 233–34 (emphasis added). In *Grynberg*, we pointed out that the "issue central to the resolution" of that case was "whether the owner of a severed surface estate has the authority to grant permission to conduct drilling" when the mineral estate holder has withheld consent. *Id.* at 234. Unlike *Grynberg*, however, in this case the mineral estate holder, Mallon, agreed that the Tribe's activities carried out through the USGS were authorized, that is, Mallon, in effect, consented under the Mineral Exploration and Development Agreement (MEDA), by which Mallon acquired its leasehold or mineral estate interest. Hence, such actions by the surface estate owner carried out with the permission of the mineral estate owner could hardly amount to unauthorized exploration of mineral rights or an invasion of the interests of the mineral estate owner. Thus, in my view, Mallon has not offered a set of circumstances amounting to, nor can it prove, a geophysical trespass here.

## II.

In *Grynberg*, we noted that the city defendant had engaged in "exploration . . . without [the] consent of . . . the owner of the [mineral estate]," which we concluded invaded the rights of Grynberg, the lessee and owner of the mineral estate. *Id.* at 236. We then reasoned that we "recogniz[e][the] unauthorized exploration of mineral rights as an invasion of the interest of the mineral owner for the reasons . . . well explained in *Layne Louisiana Co. v. Superior Oil Co.*, [209 La. 1014] 26 So.2d 20, 22 (La.1946)." *Id.* at 237. Quoting *Layne Louisiana Co.*, we then set forth those reasons:

> It is a well-known and accepted fact in this, the third largest producing oil State, that the *right to geophysically explore land for oil, gas or other minerals is a valuable right.* Large sums of money are annually paid landowners for the mere right to go upon their land and make geophysical and seismograph tests. The information obtained as the result of such tests is highly valuable to the person or

---

1. In fact, Mallon did not name Boyce's employer, the Tribe, as a party defendant to its civil action.

corporation by whom they are made. If the information thus obtained be favorable, it can be used and is used in dealing with the landowner for his valuable mineral rights. If the information be unfavorable, the fact quickly becomes publicly known and thus impairs the power of the landowner to deal advantageously with his valuable mineral rights. The average landowner is without means or funds to secure geophysical or seismograph information. Where that information, *which is exclusively his by virtue of his ownership* of the land, is *unlawfully obtained by others*, the landowner is clearly entitled to recover compensatory damages for the disregard of his property rights.

*Id.* (emphasis added).

As I read Justice Lohr's opinion, we recognized that: (1) "the right to geophysically explore land for ... minerals is a valuable right"; (2) the exercise of that right, involving large sums of money, leads to "information obtained" which may be "favorable" or "unfavorable"; and (3) "[w]here that information ... is unlawfully obtained by others, the landowner is clearly entitled to recover compensatory damages for the disregard of his property right." [2] *Id.*

In its opinion, the majority opines that "[i]n *Grynberg*, we stated that information acquired from geophysical exploration is highly valuable." Maj. op. at 110. If by this statement the majority concludes that the right to explore land for oil, gas, or other minerals is a valuable property right, then I agree. However, if the majority intends, as its language suggests, that the mere possession of information acquired from exploration activities would imbue the individual possessing that information with a duty to disclose, then I am not in accord with that portion of its opinion. While I agree that "information acquired from geophysical exploration is highly valuable" *id.*, I do not agree that the information itself represents a property or

other right in another compelling disclosure. In my view, such a requirement assumes the adoption of a parity of information rule, which is antithetical to the natural imbalance of information that accompanies, and indeed induces, commercial transactions for the purchase and sale of various rights in property. While such a parity of information rule may have utility outside the facts of this case involving, for example, the market for inventions (where the commodity being produced is information), as I read our precedent it does not compel, nor will reason support, compensation, either where one fails to disclose information not acquired improperly or where a relationship between the possessor and another party does not command disclosure.[3]

The United States Supreme Court twice rejected any such parity of information rule in the market for investment securities. *See Dirks v. SEC*, 463 U.S. 646, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983); *Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980). Pursuant to its authority under the Securities Exchange Act of 1934, the Securities and Exchange Commission (SEC) promulgated a catchall rule designed to limit fraud in the purchase and sale of securities, Rule 10(b)–5. The SEC administered the rule as a general prohibition against nondisclosure, assuming it was the mere possession of information that forced individuals to disclose that information or abstain from trading in securities. In *Dirks*, the Court rejected this administrative interpretation and held:

administrative and judicial interpretations have established that silence in connection with the purchase or sale of securities may operate as a fraud actionable under § 10(b) .... But such liability is premised upon a duty to disclose arising from a relationship of trust and confidence between parties to a transaction.

2. Here, in my view, the "property right" that may be compensated is the "right to geophysically explore," not any right to, or interest in, information, regardless of how valuable.

3. Moreover, such a concept raises substantial issues regarding the ability of employees, such as

Boyce, to freely leave the employ of one firm and enter the marketplace for human services by obtaining employment elsewhere. Without addressing those concerns, I merely note it may have even greater implications in an at-will employment jurisdiction such as Colorado.

*Dirks,* 463 U.S. at 660, 103 S.Ct. 3255. Previously, in a criminal proceeding brought by the Justice Department under the same SEC rule, the Court in *Chiarella* stated that a duty to disclose or abstain does not arise from the mere possession of non-public information. Rather, such a duty arises from the existence of a fiduciary relationship. *See Chiarella,* 445 U.S. at 231, 100 S.Ct. 1108.

Here, Mallon fails to assert the existence of any relationship between Boyce (or BEA) and itself which could give rise to a fiduciary or similar duty to disclose. Having failed to do so, Mallon cannot simply rely upon Boyce's possession of information, alone, regardless of how highly valuable, to prevail. It is not the geophysical exploration information held by Boyce that would automatically give rise to disclosure, but rather, the existence or nonexistence, of a relationship between Boyce and Mallon that determines the duty owed. Mallon did not establish a fiduciary relationship with either Boyce or BEA, and, hence, without more than favorable or unfavorable information, Boyce and BEA had no duty to disclose. Therefore, I am in accord with the majority inasmuch as its holding is not interpreted as an adoption of any parity of information rule.

### III.

Accordingly, for the reasons set forth herein, I concur in the result of the majority and would affirm the judgment of the court of appeals. However, I do so relying upon the reasoning set forth herein.

Justice SCOTT specially concurring.